# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-2890

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

PAUL CIESLOWSKI,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 01 CR 455—**John W. Darrah**, *Judge.*

_____

ARGUED SEPTEMBER 8, 2004—DECIDED JUNE 1, 2005

_____


Before POSNER, RIPPLE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* It is common for criminal prosecu-
tions to be resolved by the defendant's plea of guilty, but
not all guilty pleas are alike. Usually in federal court,
defendants enter the type of plea that leaves the court free
to set whatever sentence it believes is proper, under the
law. It is also possible, however, for the plea agreement to
specify a particular sentence that both the defendant and
the government agree is appropriate. See FED. R. CRIM. P.
11(c)(1)(C). That is the kind of plea agreement we have
before us in Paul Cieslowski's appeal. He pleaded guilty to
engaging in sexually explicit conduct with a minor for the

purpose of producing a visual depiction of the conduct and agreed in his plea agreement to a sentence of 210 months' imprisonment. The district court accepted this plea and sentenced Cieslowski to the agreed term.

Cieslowski later had second thoughts and decided to appeal. He now claims that his plea agreement was the result of ineffective assistance of counsel, because the agreed-upon term of imprisonment resulted from his lawyer's mistaken calculation under the federal Sentencing Guidelines. After the Supreme Court decided *Blakely v. Washington*, 124 S.Ct. 2531 (2004), he added a claim that his sentence rested on a violation of the Sixth Amendment. We conclude that counsel's performance did not fall below the threshold of constitutionally sufficient assistance, nor can Cieslowski show prejudice under these circumstances, and thus he is not entitled on this theory to have his plea agreement set aside. We also find no merit in his other challenges to the plea agreement and the sentence. Finally, we conclude that there are significant differences for purposes of *United States v. Booker*, 125 S. Ct. 738 (2005), between a sentence that results from a Rule 11(c)(1)(C) plea agreement and other sentences that the court computes independently under the Sentencing Guidelines. When the sentence the court imposes is legal under the governing statute and results from the defendant's explicit agreement, it is not affected by the judge's perception of the mandatory or advisory nature of the Guidelines, and thus there is no need for a remand for further proceedings. We therefore affirm.

# I

In October 2000, detectives of the Cook County Sheriff's Police Child Exploitation Unit began investigating a person who, through the use of a screen name, participated in various Internet chat rooms devoted to child pornography. The same individual also chatted with, and sent nude

pictures of himself to, an undercover police officer posing online as a fourteen-year-old girl. A few months later the detectives identified the screen name as belonging to Paul Cieslowski. When detectives spoke with Cieslowski, he admitted using the screen name in the chat rooms and gave written consent for a search of his home laptop computer. Forensic examiners found in excess of 8,000 image files on the laptop, most of which depicted minors engaged in sexually explicit conduct.

Cieslowski was arrested by state and federal agents and indicted by a federal grand jury on ten counts: two counts of engaging in sexually explicit conduct with a minor for the purpose of producing visual depictions of the conduct, in violation of 18 U.S.C. § 2251(a); one count of possessing material containing images of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B); and seven counts of knowingly receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A). He was indicted separately in the Circuit Court of DuPage County, Illinois, on charges of predatory criminal sexual assault and possession of child pornography stemming from the same facts and circumstances alleged in the federal indictment.

On December 6, 2001, Cieslowski pleaded guilty in the federal case to one count of engaging in sexually explicit conduct with a minor for the purpose of producing visual depictions, in exchange for the government's dismissal of the other nine counts in the indictment. In the plea agreement, which was governed in part by what was then FED. R. CRIM. P. 11(e)(1)(C), Cieslowski stipulated to the conduct alleged in the dismissed counts and agreed that this conduct would play a role in determining his sentence. (In 2002, Rule 11(e)(1)(C) was renumbered as Rule 11(c)(1)(C). Because nothing of substance was changed, we use the current numbering in this opinion.)

Using the 2000 Sentencing Guidelines manual, the parties calculated Cieslowski's offense level to be 35, resulting in a

guideline sentencing range of 168-210 months. The agreement stated that it was to be governed by what is now Rule 11(c)(1)(C). It therefore stated that "the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment of 210 months in the custody of the Bureau of Prisons. Other than the agreed term of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate." Consistent with Rule 11(c)(1)(C), the agreement also provided that "[i]f the Court accepts and imposes the agreed term of incarceration set forth, the defendant may not withdraw this plea as a matter of right under [Rule 11]. If, however, the Court refuses to impose the agreed term of incarceration set forth herein, thereby rejecting the Plea Agreement, or otherwise refuses to accept the defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound thereto."

Shortly thereafter, Heather Winslow, who had been serving as Cieslowski's counsel, withdrew from the case and current counsel was appointed. On June 18, 2002, Cieslowski filed a motion to withdraw his guilty plea, arguing that it was involuntary because it had been induced by ineffective assistance of counsel. He contended that Winslow's failure to file two suppression motions prior to pursuing the plea agreement was an error that left him no choice but to enter his plea. After holding an evidentiary hearing, the district court denied the motion.

Prior to sentencing, both parties acknowledged that they had failed to catch an amendment to the Sentencing Guidelines that affected the Guidelines range for Cieslowski's offenses. Under Amendment 615 to the Guidelines, which took effect on November 1, 2001 (a month prior to Cieslowski's guilty plea), the offense and conduct to which Cieslowski stipulated would have resulted in an offense level 33, for which the highest sentence would have

been 168 months—42 months less than the agreed upon sentence. Cieslowski again moved to withdraw his plea.

On July 9, 2003, the court denied his motion and sentenced him to 210 months. It also imposed a three-year term of supervised release and ordered him to participate in mental health aftercare, register as a sex offender, and avoid unsupervised contact with minor children. Cieslowski appealed, claiming that his agreement to plead guilty was involuntary, and thus that he should be relieved from all aspects of that plea (including, it should be noted, his waiver of the right to appeal or to attack the judgment collaterally).

## II

FED. R. CRIM. P. 11(b) requires the court to ensure, before accepting a guilty plea, that the defendant entered into it voluntarily. With this goal in mind, it requires the court to address the defendant personally to determine that the plea did not result from force, threats or promises other than those memorialized in the plea agreement. *Id.* Once the court accepts a guilty plea, a defendant does not have an absolute right to withdraw it. To the contrary, the defendant must present a "fair and just reason" for doing so. FED. R. CRIM. P. 11(d)(2)(B). We have commented that when "a defendant wishes to withdraw his plea after he states at a Rule 11 hearing that it was given freely and knowingly, he faces an uphill battle in persuading the judge that his purported reason is fair and just." *United States v. Pike*, 211 F.3d 385, 390 (7th Cir. 2000); see also *United States v. Martinez*, 169 F.3d 1049, 1054 (7th Cir. 1999) ("Because of the great weight we place on these in-court statements, we credit them over his later claims [that he would not have pleaded guilty.]"). Cieslowski informed the court at his Rule 11 colloquy that he understood the terms of his plea and was satisfied with his lawyer. With this in mind, we turn to the

reasons he now advances in support of his claim that his plea was nonetheless involuntary.

Cieslowski argues that in agreeing to plead guilty, he relied on the advice of his former counsel, Winslow. He contends that Winslow committed a series of errors, the net result of which was to destroy the voluntariness of his plea. Winslow's alleged errors included her reliance on the wrong version of the Sentencing Guidelines to calculate the sentence to which he ultimately agreed, her failure to file two suppression motions, and her failure to advise the district court of an oral agreement concerning a concurrent sentence in the state court proceeding.

We review an ineffective assistance of counsel claim under the principles set forth in *Strickland v. Washington*, 466 U.S. 668, 687-91 (1984). This well-known test requires proof of both inadequate performance and prejudice to the defendant. *Id.* at 687. As applied in the plea bargaining context, a defendant must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence. He must also show that his lawyer's deficiency was a decisive factor in his decision to plead guilty. *Martinez*, 169 F.3d at 1053.

It is undisputed that both Winslow and the government prosecutors failed to take Amendment 615 into account when they computed Cieslowski's sentence. The question is whether Winslow's error amounts to constitutionally deficient performance. We have held that "[a] gross mis-characterization of the sentencing consequences of a plea may provide a strong indication of deficient performance, but it is not proof of a deficiency. A defendant can prove that his attorney's performance was deficient if he shows that his attorney did not make a good-faith effort to discover the facts relevant to his sentencing, to analyze those facts in terms of the applicable legal principles and to discuss that analysis with him." *United States v. Barnes*, 83 F.3d 934,

940 (7th Cir. 1996) (citation omitted). This is a stringent standard, as one can see by reviewing cases in which it has not been met. For example, we have held that counsel's inaccurate prediction of a sentence, see, *e.g.*, *Martinez*, 169 F.3d at 1053, or failure to recognize issues of federal and state jurisdiction, a distinction we characterized as "among the most basic to our legal system, and even a reasonably competent first year law student must be aware of it," see *United States v. Teller*, 762 F.2d 569, 577 (7th Cir. 1985), do not amount to deficient performance. But see *Moore v. Bryant*, 348 F.3d 238, 242 (7th Cir. 2003) (finding deficient performance where erroneous advice regarding defendant's sentence stemmed from counsel's failure to review the very statute the advice was based on and counsel's admission that he was uncertain as to the statute's effect on the case). While Winslow's error shows negligence on her part, there is no evidence that her failure to spot Amendment 615 resulted from a lack of good-faith effort.

Moreover, even if the mistaken calculation amounted to deficient performance because of the 42-month difference in the high end of the Guideline range, see *Glover v. United States*, 531 U.S. 198 (2001), Cieslowski has not satisfied the prejudice requirement under the *Strickland* test. The prejudice component focuses on whether counsel's constitutionally deficient performance affected the outcome of the plea process. It requires the defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The question is thus not, as in *Glover*, whether an acknowledged mistake in computing a sentence under the Guidelines is itself prejudicial; it is whether the mistake affected the decision to plead guilty.

In *Hill*, the claimed error was erroneous advice regarding the defendant's eligibility for parole under the agreed sentence. Because the defendant "did not allege . . . that,

had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial," the Supreme Court found that the prejudice requirement had not been met. *Id.* at 60. This court has held that "a mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice." *Berkey v. United States*, 318 F.3d 768, 772-73 (7th Cir. 2003) (quoting *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (internal quotation marks omitted)). The defendant must go further and present objective evidence that a reasonable probability exists that he would have taken that step. *Id.* at 773.

Cieslowski argues that he was prejudiced by the miscalculation of his sentence because, had the proper Guidelines been used, the plea agreement would have bound the court to impose a lower sentence. He does not say, however, that he would not have pleaded guilty but for the erroneous advice. Nor, for that matter, does he offer any reason to think that the government would have agreed to the Rule 11(c)(1)(C) type of plea if the sentence had been 168 months instead of 210 months. At the sentencing hearing held on July 9, 2003, the parties and the court had an extensive discussion of the effect of Winslow's error. The Assistant U.S. Attorney pointed out that there was nothing illegal about the 210-month sentence, if one took into account the power of the court to depart upward from the Guidelines range. She further noted that this was one of the worst child pornography cases that could be brought, as it involved manufacturing child pornography using a three-month old baby, and assaulting the baby. In those circumstances, had this been either an ordinary Rule 11(c)(1)(B) plea or had Cieslowski been convicted after a trial, it is entirely possible that the district court would have imposed the harsher sentence.

In short, Cieslowski has not shown that a reasonable probability exists that he would have insisted on going to trial but for the mistaken calculation. If convicted on all 10

counts after a trial, Cieslowski faced a possible maximum sentence of 160 years, whereas by pleading guilty to one count under § 2251(a), he avoided prosecution on the other charges and limited his sentence to a statutory maximum of 20 years. And the sentence Winslow negotiated in exchange for his guilty plea was less than the maximum sentence for that one count. On this record, we cannot conclude that even if Winslow's error amounted to deficient performance, Cieslowski would have insisted on going to trial instead of entering into the plea agreement.

We can be more brief with Cieslowski's claim that Winslow's failure to file two suppression motions amounted to ineffective assistance. He argues that Winslow should have moved to suppress the images found on his computer because his consent to the search was not voluntary. He also argues that Winslow should have moved to suppress his statements made at the time of his arrest because they were obtained in violation of his *Miranda* rights.

Generally when an attorney articulates a strategic reason for a decision, the court defers to that choice. See *Strickland*, 466 U.S. at 690-91. If an attorney's decision was sound at the time it was made, the decision cannot support a claim of ineffective assistance of counsel. *Winters v. Miller*, 274 F.3d 1161, 1166 (7th Cir. 2001). When the claim of ineffective assistance is based on counsel's failure to present a motion to suppress, we have required that a defendant prove the motion was meritorious. *Owens v. United States*, 387 F.3d 607, 610 (7th Cir. 2004); *United States v. Stewart*, 388 F.3d 1079, 1084 (7th Cir. 2004).

Cieslowski argues that Winslow's decision was objectively unreasonable, because such a motion would clearly have succeeded. His reason for such confidence is because the state prosecutor acquiesced in a similar motion filed in the state court proceeding. We do not know, of course, why the state prosecutor chose to concede a *Miranda* violation, but

that concession is certainly not binding on the federal court. In fact, it seems unlikely to us that the court would have granted any such motions. Winslow, whose testimony the district court found more credible than that of Cieslowski, explained that she did not file the motion to suppress the evidence found on his laptop because Cieslowski had given written consent to the search and she did not believe he would prevail. She also testified that she decided against filing a motion to suppress his inculpatory statements because it would have made little difference considering the overwhelming evidence found on his laptop and damaging statements made by Cieslowski's ex-wife. Winslow was concerned that filing the proposed suppression motions would have put Cieslowski at risk of an upward departure for obstruction of justice as well as losing the credit he would otherwise receive for accepting responsibility. On top of all that, Winslow related that she did not recall Cieslowski's ever indicating to her a desire to go to trial. Winslow's decisions fall squarely within the realm of strategic choice and thus do not support a claim of ineffective assistance of counsel.

The final basis for Cieslowki's ineffective assistance claim is that Winslow failed to advise the district court about a sentencing agreement reached in the state court proceeding. Under this alleged agreement, Cieslowski was to serve a concurrent sentence for the state charges. Although he now asserts that this agreement induced his plea in federal court, he explicitly responded "no" at his Rule 11 colloquy when asked by the court whether any promises had been made outside of the plea agreement. Nor is there any dispute that he did in fact receive this concurrent sentence. We cannot see how the gap in the district court's knowledge prejudiced him in any way.

An even more fundamental flaw in Cieslowski's argument is the lack of evidence that this was a promise made by the federal prosecutors in exchange for his plea in the federal

case. The written plea agreement contains an integration clause and explicitly disclaims the effectiveness of any prior oral representation. Plea agreements are governed under the principles of contract law, see *United States v. Ingram*, 979 F.2d 1179, 1184 (7th Cir. 1992), and oral representations cannot alter the terms of a written agreement. Although there may be circumstances that merit an inquiry into whether oral promises may have induced a plea, thereby rendering it involuntary, those circumstances do not exist here. See, *e.g.*, *United States v. Graves*, 374 F.3d 80 (2d Cir. 2004).

Cieslowski has presented no evidence that the federal prosecutors ever made this contingent concurrent sentencing agreement part of his federal plea agreement. Winslow testified that no one from the U.S. Attorney's office ever made any promises regarding the state court proceedings. In fact, the federal prosecutor rejected her suggestions for coordinating the two cases. The affidavit submitted by Cieslowski's counsel in the state case says nothing about making the resolution of the federal case contingent on the state case. As the alleged concurrent sentencing agreement was not part of the federal plea agreement, Rule 11 does not require that it had to be revealed to the district court. Cieslowski has not shown that his plea was rendered involuntarily through ineffective assistance of counsel. Therefore, we find no error in the denial of his motion to withdraw the plea on this ground.

## III

Cieslowski also argues that we should vacate his guilty plea and sentence for a variety of other reasons: mutual mistake; breach of the agreement by the government; unauthorized use of the district court of its power to depart upward; and an unauthorized additional condition of supervised release. To the extent that these arguments, if successful,

would result in setting aside the plea agreement as a whole, we entertain them despite the fact that the agreement itself contains a waiver of appeal rights. Otherwise, we reject them for the more straightforward reason that Cieslowski has waived the right to urge them.

In order to put these arguments in context, we review briefly two recent decisions that have addressed efforts to set aside guilty pleas on the ground of mutual mistake. In *United States v. Bownes*, 405 F.3d 634 (7th Cir. 2005), defendant Bownes (like Cieslowski) had signed a plea agreement that included a waiver of appeal rights. Bownes argued that he should be entitled to set aside his plea agreement, including this waiver, on grounds of mutual mistake, because he had not realized at the time he entered into the agreement that *Booker* was about to change the landscape of federal sentencing practice. We held, relying on basic principles of contract law, that this is not the kind of mistake that entitles parties to set aside a plea agreement. *Id.* at 637-38. Although, as we pointed out both in *Bownes* and in *United States v. Cook*, 406 F.3d 485 (7th Cir. 2005), plea agreements may be attacked on some grounds that are not available for ordinary contracts, such as ineffective assistance of counsel, 406 F.3d at 487, the analysis of ordinary mutual mistake follows contract law. *Bownes* held that a later change in law that is favorable to the defendant— even one as major as *Booker*—is not enough to relieve a defendant of his bargain. Allocating risk about future developments is, after all, what contracts are all about. As we explain below, there is no reason why a party like Cieslowski cannot similarly allocate the risks relating to his own mistakes about the background against which the contract was made.

The mutual mistake to which Cieslowski points is, not surprisingly, the erroneous assumption by both Winslow and the Assistant U.S. Attorney that the pre-Amendment 615 version of the Guidelines was still in force. We noted in

*Barnes* that, "[a]t least in theory, ambiguity in an essential term or a mutual mistake about the meaning of such a term can invalidate" the plea agreement. 83 F.3d at 938. Under the principles of contract law, the mistake of both parties must go to "a basic assumption on which the contract was made [which] has a material effect on the agreed exchange of performances." RESTATEMENT (SECOND) OF CONTRACTS § 152(1). We find no mutual mistake here, as the error did not go to a basic assumption of the agreement or affect the agreed exchange of performances. In exchange for pleading guilty to § 2251(a), Cieslowski received a sentence of 210 months and the assurance that he would not be prosecuted for the other nine counts in the indictment. There is no indication on the face of the agreement (nor does Cieslowski argue) that the parties intended the specified sentence to be contingent on a particular method of calculating the sentence. They agreed simply that a sentence of 210 months would be imposed. By agreeing to a specified sentence, Cieslowski insulated himself from the possibility of receiving a higher sentence, as the government bargained away its right to move for an upward departure. Had an error in calculation resulted in too low a sentence, the government would similarly have been bound.

There is no dispute that the agreement provided that the government could not request an upward departure from the agreed sentence. Cieslowski argues nonetheless that the government breached the agreement when it advised the court after the Guideline error was discovered that it could lawfully impose the 210-month sentence under the amended Guidelines if it upwardly departed from the 168-month level to reach the agreed 210-month point. As far as the court's authority to depart goes, this is correct, although there was no real upward departure here as we explain below. The key point is that the government did not breach the agreement, as it requested only that the court impose the sentence to which Cieslowski had agreed. Nor did the

court err when it imposed the exact term of imprisonment it was bound to accept under the terms of the agreement and under Rule 11(c)(1)(C), notwithstanding its erroneous belief that it was in effect making an upward departure.

The reason why this was not a true upward departure goes back to the nature of plea agreements under Rule 11(c)(1)(C). In return for this type of guilty plea, the government may agree to dismiss other charges, make sentencing recommendations, and "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply." FED. R. CRIM. P. 11(c)(1)(C). The rule further provides that "such a recommendation or request binds the court once the court accepts the plea agreement." *Id.* If the district court does not accept the sentencing agreement in its entirety, the defendant must be allowed to withdraw her guilty plea; the court does not have the power to retain the plea and discard the agreed-upon sentence.

We have held that Rule 11(c)(1)(C) "[p]lea agreements can retain their authority to bind the government, the defendant and the district court even when they provide for sentences that depart from the prescriptions of the guidelines." *Barnes*, 83 F.3d at 941. Other circuits have reached the same conclusion. See, *e.g.*, *United States v. Graves*, 374 F.3d 80 (2d Cir. 2004); *United States v. Bernard*, 373 F.3d 339 (3d Cir. 2004); *United States v. Heard*, 359 F.3d 544 (D.C. Cir. 2004); *United States v. Peveler*, 359 F.3d 369 (6th Cir. 2004). This is not to say that all sentences under a plea agreement can be accepted by the court. The sentence must comply with the maximum (and minimum, if there is one) provided by the statute of conviction. See *United States v. Gibson*, 356 F.3d 761, 766 (7th Cir. 2004) ("[E]ven when a defendant, prosecutor, and court agree on a sentence, the court cannot give the sentence effect if it is not authorized by law." (internal quotation marks omitted)).

Cieslowski's sentence of 210 months easily satisfies that standard. The maximum sentence for a conviction under 18 U.S.C. § 2251(a) is 20 years, 18 U.S.C. § 2251(d), or 30 months more than Cieslowski received. Moreover, if there was any doubt whether a court may impose a sentence outside of the Sentencing Guideline range, that doubt has been erased by the Supreme Court's recent decision in *United States v. Booker*, 125 S. Ct. 738, 764-65 (2005) (Breyer, J.), which rendered the Sentencing Guidelines advisory only. After the Guidelines took effect and prior to *Booker*, some courts acknowledged a tension between 18 U.S.C. § 3553(b)(1) and Rule 11(c)(1)(C) because the latter contemplates a sentence outside of the Guideline range, but they resolved the apparent conflict in favor of Rule 11(c)(1)(C). See 28 U.S.C. § 2072(b) (provision for supersession of statutes by later rules); *Bernard*, 373 F.3d at 344; *United States v. Goodall*, 236 F.3d 700, 705-06 (D.C. Cir. 2001). *Booker* actually strengthens the case for the validity of sentences imposed under Rule 11(c)(1)(C) plea agreements that deviate from the Guideline range.

Nothing in *Booker* undermines the validity of sentences imposed under Rule 11(c)(1)(C) plea agreements. *Booker* holds only that the sentencing court is no longer bound to impose a sentence mandated by the sentencing guidelines; it says nothing that would restrict the defendant's ability to agree with the prosecutor on a particular lawful sentence in a plea agreement under Rule 11(c)(1)(C). In fact, *Booker* has the effect of restoring what is now Rule 11(c)(1)(C) to the status it originally occupied in 1979, when it was amended to clarify the difference between subpart (B) agreements (recommended sentences) and subpart (C) agreements (specific sentences). See Advisory Committee Notes to Rule 11, 1979 Amendments. This took place before the advent of the Sentencing Reform Act of 1984, at a time when district judges had complete discretion to sentence anywhere between zero (or a statutory minimum) and the statutory maximum.

With the important qualification that the Guidelines now exist to assist the district court in making that decision, that is once again the context in which Rule 11(c)(1)(C) is operating. Under Rule 11, "the court retains absolute discretion whether to accept a plea agreement," and the agreed sentence obviously plays a role in the court's consideration. See FED. R. CRIM. P. 11 (1999) Advisory Committee's Note. A sentence imposed under a Rule 11(c)(1)(C) plea arises directly from the agreement itself, not from the Guidelines, even though the court can and should consult the Guidelines in deciding whether to accept the plea. Cf. *Heard*, 359 F.3d at 548-49. As *Booker* is concerned with sentences arising under the Guidelines, it is inapplicable in this situation.

Last, we reject Cieslowski's claim that the district court exceeded its power when it added a condition to his supervised release to the effect that he was not to have unsupervised contact with minor children. This argument sounds as if Cieslowski is attempting to enforce part of the plea agreement; if so, he is precluded from raising it by his waiver of appeal rights. If he means that this is another reason to set the agreement aside in its entirety, we reject the point. The plea agreement plainly contemplated that the district court would have the power to impose this type of condition, and Cieslowski acknowledged during the Rule 11 colloquy that the court had this power and that he could not withdraw from the agreement if he disagreed with a condition of supervised release. Nothing here would justify relieving him of the consequences of the agreement as a whole.

## IV

Cieslowski would also like to raise a Sixth Amendment challenge to various aspects of his sentence, but once again, since we have concluded that he cannot escape the plea agreement, he cannot do so. The plea agreement contained a waiver of Cieslowski's right to appeal "any sentence within

the maximum provided in the statute of conviction." We strictly enforce such waivers. See *Barnes*, 83 F.3d at 941; *United States v. Feichtinger*, 105 F.3d 1188, 1190 (7th Cir. 1997). Cieslowski voluntarily entered into the plea agreement, and he is therefore bound by all its terms, including the waiver of his right to appeal the sentence.

For these reasons, Cieslowski's conviction and sentence are AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*