In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1374

THOMAS H. HURLOW,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 2:10-cv-00244-WTL-WGH — **William T. Lawrence**, *Judge.*

ARGUED MAY 29, 2013 — DECIDED AUGUST 9, 2013

Before BAUER, WOOD, and TINDER, *Circuit Judges.*

BAUER, *Circuit Judge.* Petitioner Thomas Hurlow pleaded
guilty to multiple drug and firearm offenses after law enforce-
ment officials discovered drugs and a firearm in the home
Hurlow shared with his fiancée. In a written plea agreement,

Hurlow waived his right to challenge his conviction under 28 U.S.C. § 2255. He has done just that, though, alleging in a § 2255 petition that he advised his trial counsel of events that suggested that the search of his home was in violation of *Georgia v. Randolph*, 547 U.S. 103 (2006), but that counsel failed to investigate those events and instead persuaded Hurlow to plead guilty. The district court denied Hurlow's request for an evidentiary hearing and concluded that his § 2255 motion was barred by the waiver in his plea agreement. Because the § 2255 waiver in his plea agreement does not bar his claim that his trial counsel was ineffective in negotiating the plea agreement, we remand the matter to the district court for an evidentiary hearing on that claim.

## I. BACKGROUND

On December 16, 2008, a case worker from the Indiana Department of Child Services and two detectives from the Vigo County Drug Task Force arrived at the home Hurlow shared with his fiancée, Tina Funk, to conduct a welfare check on Funk's children. According to Hurlow, he objected to the presence of the detectives and requested that they leave unless they had a valid search warrant. The detectives instead asked Funk for her permission to search the house. The detectives told Funk that her children would be taken from her if she did not agree to the search; Funk gave her written consent to the search over Hurlow's objections.

During the search that followed, the detectives found a substance containing detectable amounts of methamphetamine, marijuana, drug paraphernalia, and a handgun. After being taken into custody and read his *Miranda* warnings,

Hurlow told the detectives that all of the illegal items found belonged to him and that Funk had no knowledge that the drugs were in the home.

According to Hurlow, he told his appointed trial counsel the circumstances surrounding the search of the home that led to his arrest. He also informed counsel that his "rights ha[d] been violated" by the search and "requested that [counsel] advocate that as a defense." Hurlow contends, though, that counsel "failed to listen to Hurlow's version of events," "fail[ed] to investigate" the events surrounding the search, and otherwise failed to make "any attempt" to pursue Hurlow's claim that the search was illegal. Instead, counsel persuaded Hurlow to plead guilty to avoid a sentence of "30 years to life imprisonment."

Based on counsel's advice, Hurlow entered into a plea agreement with the government and pleaded guilty to all of the charges against him. Like many plea agreements, this one contained a provision noting Hurlow's agreement not to contest his conviction or sentence in a collateral attack under 28 U.S.C. § 2255. In addition to the plea agreement, the parties submitted a stipulated factual basis for the plea to the district court. Regarding the December 2008 search that led to Hurlow's arrest, the document states that "Funk granted [the detectives] consent to search [the home] in writing."

During his change of plea hearing on July 28, 2009, the district court conducted a Rule 11 colloquy, and Hurlow affirmed the factual basis for the plea, including that Funk consented to the search. He also affirmed that he was satisfied with his counsel's representation and that he had "had

sufficient time to talk with him and to work with him to try to consider any options that [Hurlow] might have in this case[.]" Hurlow agreed that there was not anything that he wanted his counsel "to do in regards to this case that he failed to do[.]" The district court concluded that Hurlow's plea was "knowing and voluntary," and ultimately sentenced him to 248 months' imprisonment.

On September 9, 2010, Hurlow filed a motion for post-conviction relief pursuant to 28 U.S.C. § 2255, arguing, among other claims, that his plea agreement was involuntary because it resulted from the ineffective assistance of trial counsel. Hurlow alleged that he informed his trial counsel of the facts surrounding the search of the home he shared with Funk but that counsel failed to listen to Hurlow, conduct any investigation regarding the search, or file a motion to suppress that would have been successful under *Georgia v. Randolph*. He instead persuaded Hurlow to plead guilty.

The district court rejected Hurlow's request for an evidentiary hearing and denied his § 2255 motion, concluding that Hurlow had "waived his opportunity to challenge his conviction pursuant to § 2255." The district court reasoned that the waiver in the plea agreement barred Hurlow's motion because Hurlow had not alleged that his counsel was "ineffective with regard to negotiation of the waiver" and his statements at his plea colloquy indicated that "his plea was knowing, intelligent, and voluntary." The district court accordingly denied Hurlow's § 2255 motion, denied a certificate of appealability, and entered judgment on September 26, 2011.

On February 9, 2012, the district court docketed Hurlow's notice of appeal.[1] Because the district court received the notice of appeal outside the sixty-day window under Federal Rule of Appellate Procedure 4(a)(1)(B), we ordered Hurlow to address the timeliness of his appeal. In response, Hurlow filed declarations asserting that he mailed his notice of appeal on October 27, 2011, and seeks to avail himself of the prison "mailbox rule." *See* Fed. R. App. P. 4(c).

According to Hurlow, on October 27, 2011, he prepared his notice of appeal and request for a certificate of appealability, placed the documents in a "postage pre-paid envelope," and deposited them in a mailbox located in his unit at Federal Correctional Institution (F.C.I.) Williamsburg, the prison where he was incarcerated. Hurlow says that "the [Federal Bureau of Prisons] [has] a system for mailing letters certified," and that "the mailroom staff will document when [the mail was sent] and to whom it is addressed," but that he did not believe he had to send his notice of appeal that way based on a conversation with the prison mailroom staff. Specifically, Hurlow maintains that the "mailroom staff" told him that using the mailbox in his unit "was just as efficient as placing [the envelope] into their hands for first class mail," that it "ma[de] no difference" which method he chose, and that the envelope "is considered delivered to the court the moment it is done."

---

[1]    It appears that Hurlow contacted this Court regarding his appeal at some point, and when notified by a letter dated January 26, 2012, that he did not have an appeal pending, sent the filing that was received on February 9, 2012. The filing included copies of his notice of appeal and request for a certificate of appealability dated October 27, 2011.

On October 31, 2012, we granted Hurlow's request for a certificate of appealability as to his claim that he was denied his Sixth Amendment right to effective assistance of counsel in the negotiation of his plea agreement.

## II. DISCUSSION

This appeal does not involve the merits of Hurlow's ineffective assistance of counsel claim. Rather, the appeal presents us with two issues that go to whether Hurlow should be heard on that claim: the timeliness of his appeal and the effect of the § 2255 waiver in his plea agreement. We address each in turn.

### A. Timeliness of Hurlow's Appeal

We first consider whether the prison mailbox rule applies to Hurlow's filing of his notice of appeal, thereby rendering it timely. The prison mailbox rule, established by the Supreme Court in *Houston v. Lack*, 487 U.S. 266, 275–76 (1988), and codified in Rule 4(c) of the Federal Rules of Appellate Procedure, provides that a prisoner's notice of appeal is deemed filed at the moment the prisoner places it in the prison mail system, rather than when it reaches the court clerk. In order to receive the benefit of the prison mailbox rule, Rule 4(c) requires that an inmate use the prison's legal mail system if it has one. *United States v. Craig*, 368 F.3d 738, 740 (7th Cir. 2004) (citing Fed. R. App. P. 4(c)(1)). If, however, "the prison lacks such a system: 'Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first class postage has been prepaid.'" *Id.* (quoting Fed. R. App. P. 4(c)(1)).

Here, in response to our request for briefing on the timeliness of his appeal, Hurlow filed declarations stating that he placed his notice of appeal in a postage pre-paid envelope in his prison's mail system on October 27, 2011, well within the sixty-day window to appeal. The government contends that Hurlow failed to comply with Rule 4(c), however, because Hurlow's statement that F.C.I. Williamsburg had a system for sending certified mail affirmatively establishes that F.C.I. Williamsburg had a system for legal mail, and Hurlow did not use it. Alternatively, the government argues that Hurlow is not entitled to the benefit of the prison mailbox rule because he has not shown that F.C.I. Williamsburg did not have a legal mail system at the time he mailed his notice of appeal.

We find no merit to either argument. First, that the prison had a system for sending and logging certified mail does not mean it had a system "designed for legal mail." *See* Fed. R. App. P. 4(c). A "legal" mail system for purposes of Rule 4(c)(1), is one that, at a minimum, is a "special" system separate from the prison's general mail system. *See Ingram v. Jones*, 507 F.3d 640, 644 (7th Cir. 2007) (noting that the prison had a "separate legal mailing system"); *United States v. Gray*, 182 F.3d 762, 765 (10th Cir. 1999) (requiring prisoners to use the legal mail system where a "prison maintains a legal mail system separate from its regular mail system"); *Porchia v. Norris*, 251 F.3d 1196, 1198 (8th Cir. 2001) (noting that if a prison has "two internal mail systems, one for regular mail and another for legal mail," the prisoner must use the legal mail system); 1998 Advisory Comm. Note to Fed. R. App. P. 4(c) (stating that a legal mail system is a "special internal mail system[] for handling legal mail"). Hurlow's statements regarding the system at F.C.I.

Williamsburg for sending certified mail say nothing about the existence of a separate system, let alone one for legal mail; they are therefore not a "concession" regarding the existence of a legal mail system for purposes of Rule 4(c).[2]

Instead, the only evidence before us—Hurlow's sworn declarations—indicates that there was not a legal mail system at F.C.I. Williamsburg at the time he sent his notice of appeal. According to Hurlow, he asked the prison mailroom staff whether he should place his envelope, which was addressed to this Court, in the mailbox in his unit or directly in the hands of the mailroom staff. The mailroom staff told him that "it made no difference" whether he placed the envelope in his unit mailbox or directly in the hands of the mailroom staff: either method would be "as efficient" and the envelope would be "considered delivered to the court at the moment" Hurlow placed it in the unit mailbox or in the hands of the mailroom staff. From this exchange between Hurlow and the prison mailroom staff, which was clearly about the prison mailbox rule, the only reasonable inference—assuming the competency and honesty of the mailroom staff, which we will absent evidence to the contrary—is that F.C.I. Williamsburg did not have a legal mail system at the time he sent his notice of appeal or he would have been informed of such system by the prison

---

[2]     For the same reason, we reject the government's reliance on 28 C.F.R. § 540.22, which provides that "[a]n inmate, at no cost to the government, may send correspondence by registered, certified, or insured mail, and may request a return receipt." The fact that BOP regulations require F.C.I. Williamsburg to have a procedure for sending certified mail likewise does not mean there was a legal mail system within the meaning of Rule 4(c).

staff. We therefore reject the government's arguments regarding the existence of a legal mail system at F.C.I. Williamsburg.[3]

We have said before that a prisoner who submits a declaration under Rule 4(c)(1) must attest to "only two things": the date the notice was deposited into the prison mail system and that first class postage was prepaid. *Craig*, 368 F.3d at 740. Hurlow's declaration meets this requirement.[4] We therefore conclude that Hurlow is entitled to the benefit of the prison mailbox rule and his notice of appeal was timely.

### B. Hurlow's § 2255 motion

We now turn to the issue of whether Hurlow's § 2255 challenge to his conviction is barred by the collateral review waiver in his plea agreement. We review *de novo* the enforceability of a plea agreement's waiver of direct or collateral review. *Dowell v. United States*, 694 F.3d 898, 901 (7th Cir. 2012). It is well-settled that waivers of direct and collateral

---

[3]   We note at this juncture that we remain puzzled as to why the government failed to make any effort to investigate on its own whether F.C.I. Williamsburg had a legal mail system at the time Hurlow sent his notice of appeal. Had the government come forward with an affidavit or other evidence attesting to the existence of a legal mail system at F.C.I. Williamsburg, this would be a very different case. However, as we have noted, Hurlow's declarations are the only evidence in the record regarding this issue.

[4]   In a footnote in its initial brief addressing the timeliness of the appeal, the government quibbled with Hurlow's failure to specify that postage on his pre-paid envelope was *first-class* postage, but it wisely abandoned that argument given that the first-class nature of the postage is clear from other statements in Hurlow's declarations.

review in plea agreements are generally enforceable. *United States v. Chapa*, 602 F.3d 865, 868 (7th Cir. 2010); *Jones v. United States*, 167 F.3d 1142, 1144–45 (7th Cir. 1999). Nevertheless, because a plea agreement is a contract and generally governed by ordinary contract law principles, waivers contained in the agreements are unenforceable in certain circumstances akin to those in which a contract would be unenforceable, such as when the government has materially breached the agreement, *see United States v. Quintero*, 618 F.3d 746, 750–52 (7th Cir. 2010), or the dispute falls outside the scope of the waiver, *Bridgeman v. United States*, 229 F.3d 589, 591 (7th Cir. 2000).

Though disputes over plea agreements are "usefully viewed through the lens of contract law," we have recognized that the application of ordinary contract law principles to plea agreements, "must be tempered by recognition of limits that the Constitution places on the criminal process, limits that have no direct counterparts in the sphere of private contracting." *United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005). For example, "while a contracting party is bound by the mistakes of his lawyer, however egregious (his only remedy being a suit for malpractice), the Constitution entitles defendants entering plea agreements to effective assistance of counsel." *Id.* at 637. We have therefore repeatedly recognized that appellate and collateral review waivers cannot be invoked against claims that counsel was ineffective in the negotiation of the plea agreement. *United States v. Jemison*, 237 F.3d 911, 916 n.8 (7th Cir. 2001); *United States v. Hodges*, 259 F.3d 655, 659 n.3 (7th Cir. 2001); *Bridgeman*, 229 F.3d at 591.

Despite our precedent indicating that a collateral review waiver does not prevent a habeas petitioner from being heard on claims that his plea agreement was the product of ineffective assistance of counsel, the government argues, and the district court concluded, that this avenue of relief from waiver is not applicable to Hurlow because he has not alleged that his counsel was ineffective in the negotiation of *the waiver provision* of his plea agreement, as opposed to the agreement as a whole. In support, the government relies upon *Jones v. United States*, in which we stated that collateral review "waivers are enforceable as a general rule; the right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver." 167 F.3d at 1145. But a more complete reading of *Jones* does not support the government's interpretation: we stated that "[t]he right to appeal survives where *the agreement* is involuntary" and reasoned that "[j]ustice dictates that a claim of ineffective assistance of counsel in connection with the *negotiation of a cooperation agreement* cannot be barred by the agreement itself—the very product of the alleged ineffectiveness." *Id.* at 1144–45 (emphasis added). And we enforced the waiver provision in *Jones* not because the defendant failed to show ineffectiveness with regards to the negotiation of the waiver provision, but because the defendant made no showing whatsoever with respect to his "naked assertions that he was denied effective assistance of counsel and that the agreement was involuntary." *Id.* at 1145–46.[5]

---

[5] The government's reliance on *Mason v. United States*, 211 F.3d 1065,

(continued...)

While we have repeated the less-than-artful phrase in *Jones* regarding the "negotiation of the waiver," *e.g., United States v. Sines*, 303 F.3d 793, 798 (7th Cir. 2002), we have never held that the waiver is unenforceable only when counsel is ineffective in negotiating the specific waiver provision. Instead, our cases since *Jones* have affirmed that an attorney's ineffectiveness with regard to the plea agreement as a whole, and not just the specific waiver provision at issue, renders the waiver unenforceable. *E.g., Bridgeman*, 229 F.3d at 591 ("A plea agreement that also waives the right to file a § 2255 motion is generally enforceable unless the waiver was involuntary or counsel was ineffective in negotiating the agreement." (citation omitted)); *Hodges*, 259 F.3d at 659 n.3 ("[A] valid appellate waiver contained in a plea agreement does not preclude a defendant's claim that the plea agreement itself was the product of ineffective assistance of counsel." (citing *Jones*, 167 F.3d at 1144–45)); *Jemison*, 237 F.3d at 916 n.8 ("We have previously recognized that a valid appellate waiver, though binding in other respects, does not preclude judicial review of a criminal defendant's assertion that her plea agreement was itself the product of ineffective assistance of counsel." (citation omitted)). This is because a "claim[] that the plea agreement was involuntary or

---

[5] (...continued)
1069–70 (7th Cir. 2000), is similarly misplaced. In *Mason*, we affirmed the denial of the petitioner's § 2255 motion based on the collateral review waiver in his plea agreement. We noted, however, that Mason "never claimed that his waiver was the result of ineffective assistance or that he did not knowingly and voluntarily agree to the terms of the plea." *Id.* at 1068. Instead, his ineffective assistance of counsel claim related "only to his attorney's performance with respect to sentencing." *Id.* at 1069.

the result of ineffective assistance of counsel … concern[s] the validity of the plea agreement," and so it "would knock out the waiver … along with the rest of the promises" if successful. *United States v. Behrman*, 235 F.3d 1049, 1051 (7th Cir. 2000). Thus, "a waiver stands or falls with the plea bargain of which it is a part." *Quintero*, 618 F.3d at 752 (citation omitted); *see also United States v. Sakellarion*, 649 F.3d 634, 639 (7th Cir. 2011) ("Of course, if a plea agreement is unenforceable, the waiver falls with the agreement.") (internal quotation marks and citation omitted)*; United States v. Cieslowski*, 410 F.3d 353, 361–62 (7th Cir. 2005) ("To the extent [the defendant's] arguments, if successful, would result in setting aside the plea agreement as a whole, we entertain them despite the fact that the agreement itself contains a waiver of appeal rights."); *United States v. Hare*, 269 F.3d 859, 860 (7th Cir. 2001) ("A waiver of appeal is valid, and must be enforced, unless the agreement in which it is contained is annulled (for example, because involuntary)." (citations omitted)); *United States v. Wenger*, 58 F.3d 280, 282 (7th Cir. 1995) ("Waivers … must stand or fall with the agreements of which they are a part."). We accordingly reaffirm that a direct or collateral review waiver does not bar a challenge regarding the validity of a plea agreement (and necessarily the waiver it contains) on grounds of ineffective assistance of counsel; Hurlow need not have alleged that his counsel was ineffective in the negotiation of the waiver provision of his plea agreement specifically.

Our inquiry does not end here, however. Not every claim of ineffective assistance of counsel can overcome a waiver in a plea agreement. We have rejected broad, unsupported assertions of ineffective assistance, *see, e.g., Jones*, 167 F.3d at

1145–46, as well as "garden variety attacks … raise[d] in the guise of a claim of ineffective assistance of counsel[,]" *United States v. Joiner*, 183 F.3d 635, 645 (1999). We therefore must determine whether Hurlow's claims of ineffective assistance of counsel are sufficient to overcome the waiver in his plea agreement.

Our analysis here is informed by cases in which a defendant has pleaded guilty unconditionally, which, like a direct or collateral review waiver, generally "forecloses any opportunity to contest any alleged antecedent constitutional deprivations." *Gomez v. Berge*, 434 F.3d 940, 943 (7th Cir. 2006). In *Tollet v. Henderson*, the Supreme Court explained the reasoning behind this principle:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

411 U.S. 258, 267 (1973). The Supreme Court recognized, though, that a criminal defendant can bring claims "attack[ing] the voluntary and intelligent character of the guilty plea[,]" such as claims that the defendant "plead[ed] guilty on the advice of counsel" that "was not 'within the range of competence demanded of attorneys in criminal cases[.]'" *Id.* at 266–67 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). This includes cases in which counsel has "fail[ed] to evaluate

properly facts giving rise to a constitutional claim, or [failed to] inform himself [properly] of facts that would have shown the existence of a constitutional claim[.]" *Id.* at 266–67. The Supreme Court emphasized, however, that while the habeas petitioner "must, of course, prove that some constitutional infirmity occurred in the proceedings[,]" the "focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." *Id.* at 266. Nevertheless, while claims of prior constitutional deprivations "are not themselves independent grounds for federal collateral relief[,]" they "may play a part in evaluating the advice rendered by counsel[.]" *Id.* at 267.

The same is true for a petitioner such as Hurlow who seeks to overcome the waiver provision in his plea agreement based on ineffective assistance of counsel: he cannot just assert that a constitutional violation preceded his decision to plead guilty or that his trial counsel was ineffective for failing to raise the constitutional claim. Rather, he must allege that he entered the plea agreement based on advice of counsel that fell below constitutional standards. In other words, he must allege that the plea agreement was "the product of ineffective assistance of counsel," *Jemison*, 237 F.3d at 916 n.8, or "tainted by ineffective assistance of counsel," *United States v. Henderson*, 72 F.3d 463, 465 (5th Cir. 1995). *See also United States v. Teeter*, 257 F.3d 14, 25 n.9 (1st Cir. 2001) ("This category [of situations in which denying a right of appeal would work a miscarriage of justice] is infinitely variable, but, by way of illustration, we would include within it situations in which appellants claim … that the plea proceedings were tainted by ineffective assistance of counsel." (citations omitted)); *DeRoo v. United States,* 223 F.3d

919, 924 (8th Cir. 2000) ("[W]aiver of the right to seek section 2255 post-conviction relief does not waive defendant's right to argue, pursuant to that section, that the decision to enter into the plea was not knowing and voluntary because it was the result of ineffective assistance of counsel"). For example, in *United States v. Cieslowski*, the defendant's plea agreement contained a waiver of direct and collateral review, but the defendant claimed that his decision to enter into that plea agreement was the product of his attorney's ineffectiveness in "fail[ing] to file two suppression motions[.]" 410 F.3d at 358, 360. Because this claim was the sort that, "if successful, would result in setting aside the plea agreement as a whole," we considered (and ultimately rejected) the defendant's ineffective assistance of counsel argument on the merits. *Id.* at 361.

Turning to Hurlow's allegations in his § 2255 petition, we similarly conclude that they are sufficient to overcome the waiver in his plea agreement. First, he alleged that his trial counsel was ineffective by failing to recognize that the detectives who obtained the critical evidence against him did so in violation of the Fourth Amendment: even though Hurlow apprised him of facts that indicated that the search violated *Georgia v. Randolph*, counsel refused to listen or investigate further. *See Tollet*, 411 U.S. at 266–67 ("Counsel's failure to evaluate properly facts giving rise to a constitutional claim, or his failure properly to inform himself of facts that would have shown the existence of a constitutional claim, might in particular fact situations meet this standard of proof."). Second, Hurlow alleged that his decision to plead guilty resulted from counsel's ineffectiveness. According to Hurlow, counsel failed to inform him that a challenge to the search was possible, and

instead "persuaded" and "cajoled" him into pleading guilty by telling him "that if [he] did not plead guilty, that [he] would [receive] 30 years to life imprisonment." Hurlow alleged that had he known he could "contest the unconstitutional and unreasonable search[,]" he "would not have entered into the one-sided government authorized plea agreement" or "pled guilt[.]" Thus, Hurlow is saying that he would not have agreed to the terms of the plea agreement had his counsel informed him of his potentially meritorious Fourth Amendment claim. *Cf. Cieslowski*, 410 F.3d at 360 ("He does not say, however, that he would have not pleaded guilty but for the erroneous advice."). This is sufficient to overcome the collateral review waiver in his plea agreement.

Seeking to avoid this result, the government argues that Hurlow affirmed his satisfaction with counsel when he "knowingly and voluntarily" pleaded guilty after a "thorough Rule 11 colloquy." But as we discuss above, a plea, even one that complies with Rule 11, cannot be "knowing and voluntary" if it resulted from ineffective assistance of counsel. *See United States v. Jordan*, 870 F.2d 1310, 1317 (7th Cir. 1989) ("A guilty plea is intelligent and knowing when the defendant is competent, aware of the charges, and advised by competent counsel." (citation omitted)); *see also Brady v. United States*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights[,]" such as guilty pleas, "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."). It is not surprising that Hurlow said he was satisfied with counsel; when he told his counsel about the facts surrounding the search, his lawyer ignored him. Thus, his statement to the

district court was made against the backdrop of his ignorance regarding the possibility of a successful motion to suppress.

Moreover, aside from his dissatisfaction with counsel, Hurlow's allegations in his § 2255 petition are not inconsistent with the factual basis for his plea or the statements he made under oath during the Rule 11 colloquy. Hurlow does not dispute that Funk gave her written consent to the search. Rather, he claims Funk's consent resulted from a coercive police threat and that he objected to the search prior to Funk's consent. Thus, nothing we have said in any way undercuts the fact that representations made to a court during "a plea colloquy are presumed to be true." *United States v. Chavers*, 515 F.3d 722, 724 (7th Cir. 2008).

In reaching the conclusion that the collateral review waiver in Hurlow's plea agreement does not bar his claim that his guilty plea resulted from ineffective assistance of counsel, we offer no opinion regarding the veracity of Hurlow's allegations or the ultimate outcome of his collateral attack. Our inquiry here is focused on whether Hurlow's allegations entitle him to an evidentiary hearing on his § 2255 motion. We conclude that they do, and accordingly remand the case to the district court for a hearing on Hurlow's Sixth Amendment claim.

## III.  CONCLUSION

For the foregoing reasons, we REVERSE the district court's denial of Hurlow's petition and REMAND for further proceedings consistent with this opinion.