In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 15-1297

LOGAN M. GAYLORD,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

_____

Appeal from the United States District Court for the
Central District of Illinois.
No. 4:14-cv-4092 — **James E. Shadid**, *Chief Judge.*

_____

ARGUED JUNE 1, 2016 — DECIDED JULY 12, 2016

_____

Before WOOD, *Chief Judge,* and BAUER and FLAUM, *Circuit Judges.*

FLAUM, *Circuit Judge.* Logan Gaylord pled guilty to conspiracy to distribute and to distribution of oxycodone. Ryan Evins ingested the oxycodone pills distributed by Gaylord, as well as cocaine from another source, and died. Gaylord was sentenced to 240 months imprisonment, the mandatory minimum sentence when death results from the distribution of a controlled substance under 21 U.S.C. § 841(b)(1)(C). Gaylord

later brought a 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence, arguing that as a result of ineffective assistance of counsel, the "death results" enhancement of § 841(b)(1)(C) was inappropriately applied to his sentence. Specifically, Gaylord contended that the oxycodone he distributed was not shown to be the but-for cause of Evins's death, and thus counsel was ineffective for failing to object to the sentencing enhancement incorporated in the plea agreement. The district court dismissed Gaylord's § 2255 motion. For the reasons that follow, we vacate the district court's dismissal of Gaylord's § 2255 motion and remand to the district court for an evidentiary hearing on Gaylord's claim of ineffective assistance of counsel.

## I. Background

On August 11, 2011, Gaylord pled guilty to conspiracy to distribute oxycodone and to the distribution of oxycodone in violation of 21 U.S.C. § 841(a)(1).[1] Gaylord admitted to distributing twelve oxycodone pills to Kelsey Demaught, who gave seven of those pills to Evins. Evins ingested the pills, as well as cocaine that he obtained from another source, and was found dead the following day. The coroner's postmortem report and the forensic pathology report both stated that the cause of Evins's death was "oxycodone and cocaine intoxication." The forensic pathology report also stated that "[t]he oxycodone concentration is consistent with those that have resulted in fatalities. The cocaine demonstrates acute use and

---

[1] Gaylord also pled guilty to possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k) and possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). He does not challenge these convictions in this appeal.

may result in a fatality." Gaylord contends that his counsel never showed him these reports.

The presentence investigation report ("PSR") mischaracterized the postmortem and forensic pathology reports, stating that "[t]he autopsy showed that Evins had a lethal amount of oxycodone and a large amount of cocaine in his system." Similarly, the factual basis in the plea agreement stated that the oxycodone caused Evins's death. At Gaylord's plea hearing, the prosecutor recited this statement from the plea agreement, and the district court asked Gaylord if the facts were correct. Gaylord responded affirmatively.

As part of his guilty plea, Gaylord waived his rights to appeal and to collaterally attack his conviction and sentence. He confirmed at his plea hearing that he was voluntarily waiving these rights.

Section 841(b)(1)(C) sets forth a mandatory minimum sentence of 240 months imprisonment for conspiracy to distribute oxycodone and for the distribution of oxycodone "if death or serious bodily injury results from the use of such substance[.]" Without this mandatory minimum, Gaylord's guidelines range would have been 210 to 262 months based on an offense level of 37 and a criminal history category of I.[2] At sentencing, the government recommended the mandatory minimum sentence, and Gaylord's attorney agreed that 240 months imprisonment was the minimum sentence the court could impose. The district court sentenced Gaylord to 240

---

[2] Gaylord contends that his guidelines range would have been 57 to 71 months imprisonment without the "death results" enhancement, but this range is unsupported by the record.

months imprisonment on December 9, 2011. Gaylord did not pursue a direct appeal.

On January 27, 2014, approximately two years after Gaylord was sentenced, the U.S. Supreme Court held in *Burrage v. United States* that but-for causation must be shown for the "death results" enhancement of § 841(b)(1)(C) to apply. 134 S. Ct. 881, 892 (2014). This but-for causation standard was already the law in our Circuit at the time of Gaylord's sentencing. *United States v. Hatfield*, 591 F.3d 945, 948 (7th Cir. 2010).

On October 10, 2014, Gaylord filed a pro se motion to vacate his sentence pursuant to § 2255, arguing that his increased sentence violated the "new rule" announced in *Burrage*. Gaylord contended that the oxycodone he distributed was not determined to be the but-for cause of death, as required by *Burrage* for the "death results" enhancement to apply, and that his counsel provided ineffective assistance by not using the postmortem and forensic pathology reports to challenge the application of the enhancement.

On February 2, 2015, the district court dismissed Gaylord's § 2255 motion. The court gave several reasons for its ruling. First, it explained that Gaylord's *Burrage* claim is a non-constitutional claim that could have been raised on direct appeal but was not, and thus the claim had been waived and was not cognizable under § 2255. Next, the court found that Gaylord's motion was untimely. Finally, the district court observed that in his plea agreement, Gaylord had waived his right to bring a collateral attack. According to the district court, Gaylord failed to argue that the plea agreement was the result of ineffective assistance of counsel, so he was bound by the waiver. The district court also denied Gaylord's petition for a certificate of appealability.

On June 8, 2015, we granted Gaylord a certificate of appealability, concluding that Gaylord "made a substantial showing that his conviction and sentence violate the rule announced in *Burrage*." We appointed counsel to represent Gaylord on appeal and asked the parties to address the four antecedent procedural questions identified by the district court: (1) whether Gaylord can obtain relief under § 2255 for a nonconstitutional claim; (2) whether *Burrage* applies retroactively; (3) whether the claim is timely; and (4) whether Gaylord waived his right to bring this claim.

## II. Discussion

Gaylord argues on appeal that the district court erred in dismissing his § 2255 motion. He challenges the application of the "death results" enhancement of § 841(b)(1)(C), arguing that the application of this sentencing enhancement was the result of ineffective assistance of counsel.

### A. Procedural Issues

Before addressing the merits of Gaylord's § 2255 motion, we note that the government has conceded three of the four antecedent procedural issues. First, the government concedes that a *Burrage* claim is cognizable under § 2255 because § 2255(a) provides relief for sentences "imposed in violation of the Constitution or laws of the United States[.]" If a defendant was improperly sentenced under § 841(b)(1)(C) as interpreted by *Burrage*, his sentence would be in violation of the laws of the United States, and thus a *Burrage* claim is cognizable under § 2255. *See Ragland v. United States* 784 F.3d 1213, 1214 (8th Cir. 2015) (per curiam) (holding that a *Burrage* claim is cognizable under § 2255). Second, the government acknowledges that *Burrage* narrowed the scope of the "death

results" enhancement of § 841(b)(1)(C) and thus applies retro-actively. *See Schriro v. Summerlin*, 542 U.S. 348, 351 (2004) ("New *substantive* rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms … ."). Third, the government concedes that Gaylord timely filed his claim within one year after *Burrage*. *See* § 2255(f)(3) (setting forth a one-year period of limitation for § 2255 motions).

However, the government contends that Gaylord's motion is barred by two procedural hurdles. First, the government argues that the district court correctly held that Gaylord waived his claim through the collateral attack waiver in his plea agreement and by not raising a claim of ineffective assistance of counsel in his § 2255 motion. We review de novo the enforceability of a plea agreement's waiver of direct or collateral review. *Hurlow v. United States*, 726 F.3d 958, 964 (7th Cir. 2013). Such waivers are generally enforceable but cannot be invoked against a claim that counsel was ineffective in the negotiation of the plea agreement. *Id.*; *see also Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999) ("Justice dictates that a claim of ineffective assistance of counsel in connection with the negotiation of a cooperation agreement cannot be barred by the agreement itself—the very product of the alleged ineffectiveness.").

We disagree with the district court's conclusion that Gaylord failed to raise the issue of ineffective assistance of counsel in his § 2255 motion. Though he did not cite *Strickland v. Washington*, 466 U.S. 668 (1984), or an analogous case, Gaylord did argue that his guilty plea was "uninformed, therefore involuntary" because his counsel insufficiently investigated his case. He claimed that his counsel did not provide him with

the postmortem and forensic pathology reports stating that
the cause of death was oxycodone *and* cocaine intoxication.
Instead, he only saw the PSR and the plea agreement, which
indicated that oxycodone was the cause of death. Thus, Gay-
lord was mistakenly led to believe that the oxycodone he dis-
tributed was the but-for cause of Evins's death. *See Galbraith v.
United States*, 313 F.3d 1001, 1006 (7th Cir. 2002) ("Due process
requires that a guilty plea, to be valid, be made voluntarily,
intelligently and knowingly."). This is enough to raise a claim
of ineffective assistance of counsel, especially given the leni-
ent standard under which we review pro se filings. *Warren v.
Baenen*, 712 F.3d 1090, 1099–1100 (7th Cir. 2013) (explaining
that we construe pro se petitions liberally). And since Gaylord
argues that his plea agreement was the product of his coun-
sel's ineffective assistance, he can overcome the waiver provi-
sion in the plea agreement. *See Hurlow*, 726 F.3d at 964.

We note that Gaylord requests that we vacate the manda-
tory minimum sentence imposed on him under the "death re-
sults" enhancement and remand for resentencing. Alterna-
tively, he requests an evidentiary hearing on his ineffective as-
sistance of counsel claim. If Gaylord were merely challenging
his sentence in his § 2255 motion, this claim would be barred
by the collateral attack waiver in his plea agreement. In other
words, given this procedural posture, we address only Gay-
lord's claim of ineffective assistance of counsel.

Second, the government argues that Gaylord procedurally
defaulted his claim by not raising it on direct appeal. This ar-
gument fails because in *Massaro v. United States*, the Supreme
Court held that ineffective assistance of counsel claims can be
brought for the first time under § 2255, regardless of whether
the petitioner could have raised the claim on direct appeal.

538 U.S. 500, 504 (2003). Therefore, we conclude that Gaylord's claim is not procedurally barred.

## B. Ineffective Assistance of Counsel

We now turn to the merits of Gaylord's § 2255 motion. Gaylord argues that as a result of ineffective assistance of counsel, the "death results" enhancement of § 841(b)(1)(C) was inappropriately applied to his sentence.

To succeed on a claim of ineffective assistance of counsel in negotiating the plea agreement, Gaylord must first demonstrate that his counsel's performance was deficient. *Strickland*, 466 U.S. at 687. This requires a showing that "counsel's representation fell below an objective standard of reasonableness" when measured against "prevailing professional norms." *Id.* at 688. In the plea bargaining context, reasonably competent counsel will "attempt to learn all of the facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis before allowing his client to plead guilty." *Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003).

Second, Gaylord must show that he was prejudiced by the deficiencies in his counsel's performance. *Strickland*, 466 U.S. at 687. To show prejudice in the plea bargaining context, a defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded and would have insisted on going to trial." *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)) (internal quotation marks omitted). In other words, a defendant must demonstrate a reasonable probability that "the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012).

Gaylord is entitled to an evidentiary hearing on his claim of ineffective assistance of counsel if he has alleged "facts that, if proven, would entitle him to relief." *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001) (citation and internal quotation marks omitted); *see also Osagiede v. United States*, 543 F.3d 399, 412 (7th Cir. 2008) ("Ineffective assistance claims generally require an evidentiary hearing if the record contains insufficient facts to explain counsel's actions as tactical."). However, such a hearing is not required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Bruce*, 256 F.3d at 597 (quoting § 2255) (internal quotation marks omitted). Nor is a hearing required if the petitioner makes allegations that are "vague, conclusory, or palpably incredible," rather than "detailed and specific." *Id.* (citation and internal quotation marks omitted).

### 1. *Deficient Performance*

Gaylord argues that his counsel performed deficiently in several ways. He contends that his counsel inadequately investigated his case and failed to provide him with the post-mortem and forensic pathology reports stating the cause of death so that Gaylord could make an informed decision about whether to plead. Relatedly, Gaylord criticizes his counsel for not challenging the application of the "death results" enhancement on the basis that his actions did not fit the statutory language of the enhancement.

Gaylord has alleged facts sufficient to support his claim of deficient performance. There is a substantial probability that the application of the "death results" enhancement to Gaylord's sentence is inconsistent with the causation requirement set forth in *Burrage*, 134 S. Ct. at 892, and *Hatfield*, 591 F.3d at 948. In *Burrage*, the Supreme Court held that:

> [A]t least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury.

134 S. Ct. at 892. *Burrage* was decided after Gaylord was sentenced. However, the but-for causation test was already the law of our Circuit at the time of Gaylord's plea negotiations and sentencing, as stated in *Hatfield*. 591 F.3d at 948 (explaining that for the "death results" enhancement to apply, "the government at least must prove that the death or injury would not have occurred had the drugs not been ingested: 'but for' (had it not been for) the ingestion, no injury").

In Gaylord's case, there was no evidence that the oxycodone he distributed was the but-for cause of death. Rather, the postmortem and forensic pathology reports stated that the cause of death was "oxycodone *and cocaine* intoxication." (emphasis added). In other words, even without the oxycodone, the cocaine concentration may have been enough to result in Evins's death. It is unclear from the record whether Gaylord's counsel was aware of the but-for cause standard of *Hatfield*, examined the postmortem and forensic pathology reports, and provided Gaylord with the information necessary for a knowing and voluntary guilty plea. Thus, Gaylord may have a viable claim of deficient performance. *See Moore*, 348 F.3d at 241 ("[R]easonably competent counsel will attempt to learn all of the facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis before allowing his client to plead guilty.").

The government argues that Gaylord's plea and sentence are consistent with *Hatfield* and *Burrage* because of an exception to the requirement of but-for causation. *Burrage* states that the but-for causation test applies "at least where use of the drug distributed by the defendant is not an *independently sufficient* cause of the victim's death … ."[3] 134 S. Ct. at 892 (emphasis added). Thus, the government argues that the oxycodone supplied by Gaylord was an independently sufficient cause of Evins's death and that it need not establish that the oxycodone was the but-for cause of Evins's death. To support this position, the government relies on the forensic pathology report, which states that the cause of death was "oxycodone and cocaine intoxication" and that "*[t]he oxycodone concentration is consistent with those that have resulted in fatalities*." (emphasis added). The government argues that the report shows that the level of oxycodone was itself sufficient to cause Evins's death, and thus Gaylord's counsel did not perform deficiently in negotiating his plea agreement and in not objecting to the sentencing enhancement.

We disagree. The forensic pathology report does not state that the oxycodone was an independently sufficient cause of

---

[3] The *Burrage* Court explained that "[t]he most common (though still rare) instance of [when but-for causation is not required] occurs when multiple sufficient causes independently, but concurrently, produce a result." *Id.* at 890. The Court supplied an example: A stabs B and inflicts a fatal wound, while at the same moment, X shoots B in the head and inflicts a fatal wound. B dies from the combined effects of the two wounds. A will generally be liable for homicide even though his conduct was not a but-for cause of B's death (since B would have died from X's gunshot anyway). In this situation, A and X were independently sufficient causes of B's death. *Id.* However, the *Burrage* Court stopped short of accepting or rejecting a special rule for independently sufficient causes.

death. Rather, the report indicates that the concentration of oxycodone has resulted in the death of others. This merely suggests that the oxycodone *could have* independently caused Evins's death. It does not establish that the oxycodone alone actually resulted in Evins's death, especially since the same concentration of a drug may have different effects on different people. *See United States v. Ilayayev*, 800 F. Supp. 2d 417, 428 (E.D.N.Y. 2011) (citing NAT'L DRUG INTELLIGENCE CTR., U.S. DEP'T OF JUSTICE, NATIONAL PRESCRIPTION DRUG THREAT ASSESSMENT 2009, at 2 (2009)) (explaining that extended and continuous exposure to oxycodone can lead to increased tolerance to the drug's effects). Further, the forensic pathology report states that "[t]he cocaine demonstrates acute use and may result in a fatality," thus indicating that the cocaine concentration may have been enough to independently cause Evins's death. Hence, the report does not demonstrate that the oxycodone was an independently sufficient cause of death.

In sum, Gaylord has alleged facts to support his claim that his counsel performed deficiently by failing to provide him with the postmortem and forensic pathology reports and not challenging the application of the "death results" enhancement to his sentence.

### 2. *Prejudice*

Next, we turn to the prejudice prong of the *Strickland* test for ineffective assistance of counsel. Gaylord has alleged sufficient facts to support a claim of prejudice, or to show that "the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S. Ct. at 1384. Without the "death results" sentencing enhancement, Gaylord's sentencing guidelines range would have been 210 to 262 months imprisonment. With the enhancement, the mandatory minimum

sentence was 240 months imprisonment and the maximum sentence was life in prison. Additionally, Gaylord alleged in his § 2255 motion that he made his decision to plead guilty based on incomplete information. He claimed that his counsel did not show him the postmortem and forensic pathology reports or explain the issue of causation, and thus his plea was involuntary and uninformed. Construing this pro se filing liberally, this is enough to establish a reasonable probability that but for counsel's ineffective assistance, Gaylord would not have pled guilty. *See Warren*, 712 F.3d at 1099–1100 (explaining that we construe pro se petitions liberally).

### 3. *Evidentiary Hearing*

Therefore, Gaylord has demonstrated that he is entitled to an evidentiary hearing on his ineffective assistance of counsel claim. An evidentiary hearing will provide Gaylord's counsel with an opportunity to explain whether he was aware of *Hatfield*'s but-for causation requirement and whether he examined the postmortem and forensic pathology reports and shared the results of his analysis with Gaylord. *See Osagiede*, 543 F.3d at 409 ("All lawyers that represent criminal defendants are expected to know the laws applicable to their client's defense." (citation and internal quotation marks omitted)); *Moore*, 348 F.3d at 241 (explaining that before allowing a client to plead guilty, reasonably competent counsel will attempt to learn the facts of the case, estimate a likely sentence, and communicate his analysis to the client). Counsel may have had a strategic reason for not contesting the "death results" enhancement under *Hatfield*, but the record before us does not contain sufficient information to allow us to make this determination. *See Osagiede*, 543 F.3d at 412 (explaining that ineffective assistance claims often require an evidentiary hearing

to more fully develop the record). Thus, we conclude that an evidentiary hearing is warranted.

### III. Conclusion

For the foregoing reasons, we VACATE the judgment of the district court dismissing Gaylord's § 2255 motion and REMAND to the district court for an evidentiary hearing on Gaylord's claim of ineffective assistance of counsel.