In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 19-1552

BRIAN MILLER,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:18-cv-1154 — **James E. Shadid**, *Judge.*

———————————

ARGUED SEPTEMBER 17, 2019 — DECIDED OCTOBER 9, 2019

———————————

Before FLAUM, ROVNER, and SCUDDER, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Brian Miller cut a hole in his bathroom wall and secretly filmed teenage girls—friends of his own children—undressing and showering. Federal authorities learned of his conduct, commenced an investigation, and, after extensive discussions, offered to allow Miller to plead guilty to possessing child pornography, an offense with a maximum penalty of ten years' imprisonment. Miller rejected the offer and instead chose to go to trial, where he was

convicted of the greater offense of producing child pornography and then sentenced to 18 years. Having previously rejected Miller's challenge to his conviction and sentence on direct review, we now affirm the district court's denial of his petition for post-conviction relief under 28 U.S.C. § 2255. The district court correctly concluded that Miller failed to show that his trial counsel provided ineffective assistance during plea negotiations.

## I

### A

In June 2012, after receiving a tip about Miller's misconduct, local authorities obtained a warrant to search his home, where they found the rigging in his basement and his cell phone. In time federal authorities became involved and searched Miller's phone. The search uncovered so-called thumbnail images—small, still photographs that serve as footprints of videos that have been deleted—of naked teenage girls. This initial search did not recover any video files on Miller's phone, however.

When federal agents approached and questioned Miller about his conduct, he hired an attorney, Joel Brown, to represent him in the investigation. The agents made clear from the outset that Miller would be charged with a child pornography offense. The only unresolved question was whether that charge would be for simple possession or production. After conferring with federal prosecutors, the agents informed Brown that the government would permit a plea to the lesser charge if Miller could show that his conduct was limited to filming the teenage girls and did not extend to any sexual contact with them. Miller sought to make this showing by

agreeing to meet with the agents to discuss his offense conduct and to submit to a polygraph exam.

Much hung in the balance for Miller: if he was able to plead to a possession offense, he faced a maximum penalty of ten years' imprisonment. See 18 U.S.C. § 2252A(a)(5)(B), (b)(2). But if he failed the polygraph or otherwise was unable to persuade the government of the scope of his conduct, Miller would face the 15-year mandatory minimum sentence that Congress prescribed for producing child pornography. See *id.* § 2251(a), (e).

Miller passed the polygraph and proffered successfully, only then to decline the government's plea offer. The government reacted as it told Miller it would—by seeking an indictment charging him with producing child pornography. By this same time, and in response to learning that Miller opted to go to trial, the U.S. Secret Service had conducted a renewed forensic examination of Miller's phone and managed to recover the videos he made of the teenage girls undressing or showering in his basement bathroom. The indictment the grand jury returned against Miller contained 22 production counts, with each count tracking each of the 22 video files found on his phone.

A bench trial followed and ended in the district court finding Miller guilty on all counts. The court then sentenced Miller to 18 years' imprisonment and 15 years' supervised release. We affirmed on direct review. See *United States v. Miller*, 829 F.3d 519, 530 (7th Cir. 2016).

### B

Miller then turned his attention to post-conviction relief. In his petition to vacate his sentence under 28 U.S.C. § 2255,

he claimed that his trial counsel, Joel Brown, provided ineffective assistance during the pre-indictment plea negotiations. With Miller and Brown offering polar opposite versions of what transpired during those discussions, the district court held a hearing to assess the competing accounts.

Miller and Brown's testimony was indeed night and day different. Miller testified that Brown advised him his maximum sentence would be ten years no matter what. At no point, Miller insisted, did Brown inform him that declining a plea could result in production charges with a 15-year mandatory minimum sentence. Miller contended that Brown's faulty advice sealed his fate: there were no viable defenses to the production charges, especially once the Secret Service found the video files revealing the young girls undressing and showering. With those videos in the government's hands, Miller insisted, there was no way the defense he ultimately pursued at trial—that the images did not reflect the "lascivious exhibition" of any girl's genitals, as required by §§ 2251(a) and 2256(2)(A)(v)—had any meaningful chance of succeeding.

For his part, Brown offered a starkly different account. He outlined for the district court his extensive experience as a criminal defense lawyer and testified that he fully informed Miller of the risks of rejecting the plea to simple possession and facing a charge of producing child pornography. Brown made plain that he expressly and specifically advised Miller that a conviction for producing child pornography would result in a sentence of at least 15 years, but that Miller insisted on going to trial on the view that accepting a ten-year sentence for possessing child pornography was tantamount to receiving a life sentence. Brown then underscored that he and Miller

"spent a long, long time" reviewing the case law informing the question whether the video images "met the federal definition of lascivious." Brown further emphasized that, in the end, he left to Miller the ultimate decision of whether to accept the government's offer (to the possession charge) or to proceed to trial (on the greater production charge).

After hearing and weighing this competing testimony, the district court credited Brown's testimony. The court found that Brown offered the more credible account of what had transpired during the pre-indictment discussions with the government. Even more specifically, the district court found that Brown provided Miller "with enough information that he was aware of the situation he faced." Accordingly, the court concluded that Brown's performance was not deficient within the meaning of the standard announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), and related cases.

## II

### A

On appeal Miller renews his argument that Joel Brown provided ineffective assistance of counsel during pre-indictment plea negotiations. The government disagrees, taking the broad position that the Sixth Amendment right to counsel does not apply to pre-indictment plea discussions. From there, however, the government steps back and argues that, even if Miller did have a right to effective assistance from Brown during plea negotiations, the district court got it right in concluding that the claim failed on the merits.

The government uttered not a word in the district court about the inapplicability of the Sixth Amendment to pre-

indictment plea negotiations. Miller urges us to view the government's silence as waiver or forfeiture. While Miller's point is well-taken, we prefer to chart a narrower course and can do so by proceeding to the merits of the district court's conclusion that Brown did not render ineffective assistance.

B

The familiar teachings of *Strickland* supply the principles for assessing an ineffective-assistance-of-counsel claim. We consider, first, whether counsel's performance was deficient and, if so, whether the deficient performance prejudiced the petitioner. See *Strickland*, 466 U.S. at 687, 694. Where, as here, the ineffective-assistance claim concerns counsel's advice to reject a guilty plea, Miller needed to make the more specific showing "that his counsel's advice to reject the plea agreement and go to trial was objectively unreasonable, and that absent this advice he would have accepted the plea offer." *Torres-Chavez v. United States*, 828 F.3d 582, 585 (7th Cir. 2016).

In advising a client to reject a plea, an attorney's performance "is deficient if the attorney grossly mischaracterizes the evidence or advises a client to reject a plea offer and go to trial in the face of overwhelming evidence and no viable defenses." *Id.* It is not enough for a defendant to show that he faced an uphill battle at trial. The defendant needs to go further by showing that, given the apparent strength of the government's case and the likelihood of a successful defense, any reasonable attorney would have recommended forgoing trial and accepting a guilty plea. See *id.* The Sixth Amendment reserves the ultimate choice for the accused: it is up the defendant, informed by counsel's advice, to determine whether to accept a plea or instead to play the odds by proceeding to trial.

See *Jones v. Barnes*, 463 U.S. 745, 751 (1983); see also *Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir. 1991).

Like the district court, we cannot conclude that Brown's performance was objectively unreasonable. Accepting the facts as found by the district court—none of which Miller has shown reflect clear error—we start from the important determination that Brown informed Miller of the risks of rejecting the government's plea offer and proceeding to trial on charges of producing child pornography. In testimony credited by the district court, Brown explained that Miller was "well aware" of the risks of forgoing a plea to simple possession charges and instead chose to put the government to its proof on the production charges. The law required no more of Brown.

To be sure, the district court could have articulated its findings about the precise content of Brown's advice to Miller in more detail. Regardless, it is abundantly clear from the record—owing to the care the district judge took in conducting the hearing and allowing Miller and Brown to air their respective positions—that the court found Brown's account altogether more credible than Miller's. Put another way, the only fair and objective takeaway from the hearing transcript and district court's findings is that Brown fully advised Miller on the risks of choosing to proceed to trial.

Miller overshoots in contending that Brown's advice walked him into a surefire conviction at trial. Recall that the indictment charged Miller with violating 18 U.S.C. § 2251(a), which made it a crime to use "any minor to engage in … any sexually explicit conduct for the purpose of producing any visual depiction of such conduct[.]" *Id.* "Sexually explicit conduct" includes the "lascivious exhibition of the anus, genitals, or pubic area of any person." *Id.* § 2256(2)(A)(v). From there,

however, Congress did not define "lascivious exhibition," and federal courts have struggled to define the term with much precision or particularity. See, *e.g.*, *United States v. Schuster*, 706 F.3d 800, 806 (7th Cir. 2013) (observing that lasciviousness "is an intensely fact-bound question"); *United States v. Frabizio*, 459 F.3d 80, 85 (1st Cir. 2006) (noting that "Congress has chosen not to employ any additional glossing" to the statutory standard).

Miller went to trial on the defense that the prosecution could not prove that the four thumbnail images found on the phone—which, at the time, comprised the extent of the government's evidence—depicted "lascivious exhibition" within the meaning of § 2256(2)(A)(v). Success at trial depended on a distinction between mere nudity and lascivious exhibition—a distinction recognized in the case law. Take our precedent, for example. We have observed that "more than nudity is required to make an image lascivious." *United States v. Griesbach*, 540 F.3d 654, 656 (7th Cir. 2008). Brown knew this and could have reasonably advised Miller that there was some prospect of beating the production charge on the view that the still images lacked that something more.

Indeed, at least one circuit had reached that precise conclusion in circumstances sufficiently analogous to those facing Miller. In *United States v. Steen*, the Fifth Circuit held that a secretly filmed video of a teenager lying naked in a tanning bed was not lascivious because there was insufficient evidence that the video was intended to elicit a sexual response in the viewer. 634 F.3d 822, 828 (5th Cir. 2011). Reasoning from cases like *Steen*, Brown could have reasonably advised Miller that a similar defense had some prospect of prevailing at trial because the thumbnail images found on Miller's phone

depicted little more than nudity—girls undressing or showering—but not lascivious exhibition. Not one of the still photos reflected any girl in a sexual pose or performing any sexual act. Nor did any of the images reflect a close-up view of any girl's genitals.

Miller begs to differ by focusing not so much on the still images initially recovered from his phone but instead on the video images recovered by the Secret Service during the second search. But Miller is conflating the timeline of events. The recovery of the videos came *after*—not before—he had decided to reject the government's plea offer and proceed to trial. Brown, in other words, formulated and conveyed his advice to Miller at a time when the government's only forensic evidence at trial would have been the thumbnail images. The law did not require Brown to foresee that the Secret Service, which conducted the first search of Miller's phone, would somehow manage to recover the videos in a second search. And with cases like *Steen* in the Federal Reporter, it was not beyond the pale for Brown to have advised Miller that he had some prospect of prevailing at trial on the defense that the government could not prove beyond a reasonable doubt that the still images reflected lascivious exhibition.

Our conclusion does not change by observing that the defense faced difficult odds once the government found and produced the video images. By then the plea offer was off the table. As we noted in our opinion affirming Miller's conviction, the minors' nudity, combined with Miller's efforts to film them and conceal his misconduct, was enough to support a finding that the videos featured a "lascivious exhibition" under § 2256(2)(A)(v). See *Miller*, 829 F.3d at 525–26; see also *United States v. Russell*, 662 F.3d 831, 843 (7th Cir. 2011) ("[T]he

intent and motive of the photographer can be a relevant consideration in evaluating those images.").

Given the reasoning embodied in cases like *Steen*, we agree with the district court that Brown's advice was not objectively unreasonable. Remember, too, that *Strickland* highlights that the strategic choices of counsel based on legal and factual research "are virtually unchallengeable" on an ineffective-assistance claim. See 466 U.S. at 690. Here the defense made a strategic choice to contest the lasciviousness of Miller's images, and to do so at a bench trial—perhaps on the view that the defense could find traction with a district judge (as opposed to lay jurors). Having made clear that he was unwilling to accept even a maximum sentence of ten years for the possession of child pornography, Miller acceded to that choice when he decided to go to trial on the production charges. We cannot say he did so because of constitutionally deficient advice provided by Brown.

On this record, then, we AFFIRM.