In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-1257

MONTA Y. ANDERSON,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

Appeal from the United States District Court for the
Central District of Illinois, Peoria Division.
No. 1:17-cv-01542 — **Michael M. Mihm**, *Judge*.

ARGUED OCTOBER 29, 2020 — DECIDED NOVEMBER 23, 2020

Before FLAUM, KANNE, and HAMILTON, *Circuit Judges*.

FLAUM, *Circuit Judge*. Petitioner-appellant Monta Anderson pleaded guilty to conspiracy to distribute heroin. Because he stipulated as part of his plea agreement that heroin he distributed through the conspiracy caused the death of James Reader, the district court applied a statutory sentencing enhancement that mandates a minimum sentence of twenty years' imprisonment for a drug offense that resulted in death. Anderson ultimately received a below-Guidelines sentence of

223 months' imprisonment and ten years of supervised release. He thereafter petitioned for collateral relief under 28 U.S.C. § 2255, arguing that his counsel provided ineffective assistance in the plea-bargaining process. The district court denied Anderson's § 2255 petition without an evidentiary hearing, holding that Anderson's counsel was not ineffective. Based on the record and circumstances of this case, we find that Anderson was entitled to an evidentiary hearing on his claim of ineffective assistance of counsel. We therefore vacate the district court's denial of Anderson's petition and remand for a hearing.

## I. Background

### A. The Offense Conduct and Guilty Plea

Beginning in 2010, Anderson participated in a conspiracy to distribute heroin in central Illinois. Over the course of two years, he bought heroin for the conspiracy from a Chicago supplier and distributed it in central Illinois to users and dealers. One of those dealers was a man named Anthony Mansini.

On August 25, 2012, Reader, a twenty-one-year-old addict, purchased heroin from a dealer unconnected to Anderson in Peoria, Illinois. Reader used that heroin intravenously in the early afternoon. Later that same day, Reader purchased an additional half-gram of heroin from Mansini, who had obtained it from Anderson. Reader then used that heroin and was found dead that evening. According to the coroner's postmortem report, the cause of death was "opiate intoxication," but the report did not attribute Reader's death to one heroin dose or the other, or make any findings on the incremental effects of other drugs. The accompanying toxicology report noted the

presence of heroin metabolites and Benadryl, and their respective amounts, in Reader's system when he died.

A grand jury indicted Anderson and four co-defendants on charges of conspiracy to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Ultimately, three of the four defendants, including Anderson, pleaded guilty. During plea negotiations with the government, Anderson's counsel had access to the postmortem and toxicology reports.

Under the terms of his plea agreement, Anderson admitted to distributing the heroin that resulted in Reader's death. The parties "agree[d] and stipulate[d] that pursuant to … Section 841(b)(1)(A), because death and serious bodily injury resulted from the use of heroin distributed by the defendant as an overt act of this conspiracy, this count carrie[d] a mandatory minimum sentence of 20 years imprisonment and a maximum sentence of life imprisonment." The parties further agreed that twenty years was the appropriate sentence, and that Anderson waived any right to appeal or collaterally attack his conviction or sentence, except for an involuntariness or ineffective-assistance-of-counsel claim.

At the change-of-plea hearing, Anderson concurred with the plea agreement's factual statements, but noted that they did not capture all the details surrounding Reader's death. During the plea colloquy, Anderson told the district court that he might have a factual defense to causation of Reader's death because Reader had bought heroin from other sources and used prescription drugs. Nonetheless, Anderson assured the district court that he was not disputing any part of the agreement, including the stipulation regarding the cause of Reader's death. The district court also verified that Anderson had discussed the charges and any possible defenses with his

attorney "several times" and that he was "fully satisfied" with
his counsel's representation and advice. The district court ac-
cepted Anderson's plea and, after crediting him for time
served in state prison for a related offense, sentenced him to
223 months' imprisonment—rather than the life sentence
called for by § 841(b)(1)(A) and the U.S. Sentencing Guide-
lines—followed by ten years of supervised release.

## B. Post-Judgment Proceedings

Anderson appealed the judgment against him. Anderson
first sent a letter to the district court asserting that he received
ineffective assistance of counsel in connection with his guilty
plea and asking the court to file a notice of appeal on his be-
half. After the district court docketed the appeal, Anderson's
counsel filed another notice of appeal and moved to dismiss
Anderson's first *pro se* appeal, which we granted. In the sec-
ond appeal, Anderson's counsel filed an *Anders* brief and
moved to withdraw. We granted the motion to withdraw and
dismissed that appeal as well, noting that Anderson's broad
waiver of appellate rights foreclosed appeal unless his guilty
plea was invalid. While his direct appeal was pending, An-
derson also moved to withdraw his guilty plea. The district
court denied the motion for lack of subject matter jurisdiction
during the pendency of his direct appeal, and we affirmed.

Anderson then initiated these § 2255 proceedings by filing
a *pro se* "Motion for Extension of Time to File Memorandum
in Support of § 2255 Motion." Seven months later, he supple-
mented his initial motion with substantive arguments. Ander-
son alleged that his plea was "not knowing and voluntary,
because [he] received ineffective [assistance] of counsel, and
but for her errors, [he] would not have pled guilty." Specifi-
cally, he contended that his counsel did not adequately

investigate the cause of Reader's death and advise Anderson of the "but-for" causation standard set forth in *Burrage v. United States*, 571 U.S. 204, 218–19 (2014).

The district court ordered the government to respond to Anderson's § 2255 petition. The court also ordered his plea counsel to submit an affidavit responding to Anderson's ineffective assistance claim and describing the advice she provided regarding the "death results" enhancement and the plea agreement. The government responded on the merits and attached an affidavit from Anderson's counsel. The affidavit stated: (1) Anderson's counsel "made all of the government[']s discovery available to Mr. Anderson, including Mr. Reader's toxicology results"; (2) prior to Anderson's guilty plea, Anderson was aware of the need to hire a medical examiner "if additional interpretation of the medical reports contained in the discovery was desired"; (3) Anderson "authorized [her] to proceed with plea negotiations without hiring a medical examiner"; and (4) she was "not trained to interpret toxicology results" and "never discussed" the toxicology evidence with anyone who had relevant training, and therefore, she could not "determine the accuracy" of Anderson's arguments regarding the cause of Reader's death.

The district court denied Anderson's § 2255 petition on the merits without an evidentiary hearing. The court held that "[t]he record before the Court, primarily the transcript from [Anderson's] Change of Plea Hearing, confirms that [he] entered into his plea agreement knowingly and voluntarily, and that his counsel was effective during plea negotiations." The court also concluded that Anderson's "self-serving claim that he was unaware of the availability of a 'but-for' defense is simply not credible in light of the documentation before the

Court." The district court further declined to issue a certificate of appealability, but we granted one. This appeal followed.

## II. Discussion

Anderson argues on appeal that the district court erred in dismissing his § 2255 petition. "When reviewing the denial of a federal prisoner's § 2255 petition, we review the district court's legal conclusions *de novo*, its factual findings for clear error, and its decision to forgo holding an evidentiary hearing for abuse of discretion." *Martin v. United States*, 789 F.3d 703, 705 (7th Cir. 2015). "The district court's decision must strike us as fundamentally wrong for an abuse of discretion to occur." *Williams v. Chi. Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998) (per curiam) (citation and internal quotation marks omitted).

### A. The Government's Timeliness Argument

There is a one-year statute of limitations for filing habeas petitions. 28 U.S.C. § 2255(f). In relevant part, the limitation period runs from "the date on which the judgment of conviction becomes final." *Id.* § 2255(f)(1). Here, Anderson's conviction became final when the ninety-day period for filing a petition for a writ of certiorari with the Supreme Court following our affirmance on direct review expired. *See Clay v. United States*, 537 U.S. 522, 532 (2003). On appeal, the government argues for the first time that Anderson's petition is untimely under § 2255(f)(1) because he did not file his motion within one year of that date. Despite more than a year of litigation below regarding Anderson's § 2255 petition, the government never raised this timeliness argument in the district court. Instead, it moved to dismiss on the merits.

"We are not required to address the government's belated timeliness argument." *Arreola-Castillo v. United States*, 889 F.3d 378, 382 (7th Cir. 2018). "The statute of limitations in § 2255(f)[(1)] is not a jurisdictional requirement, but rather an affirmative defense." *Id.* Ordinarily, a defendant must raise a statute of limitations defense in its answer. *Day v. McDonough*, 547 U.S. 198, 207–08 (2006) (citing Fed. R. Civ. P. 8(c), 12(b), 15(a)). Failure to do so results in forfeiture of the defense. *Id.* Accordingly, "courts are under no *obligation* to raise the time bar *sua sponte*." *Id.* at 205.

We nevertheless have discretion to examine—on our own initiative—the timeliness of a habeas petition. *Wood v. Milyard*, 566 U.S. 463, 471, 473 (2012) (citing *Day*, 547 U.S. at 201). As we have observed previously, this discretion is limited. When the government contends, as it does here, that it "accidentally forfeit[ed] a timeliness argument, our power to decide an appeal on a forfeited ground should be used only in exceptional cases." *Arreola-Castillo*, 889 F.3d at 383 (citation and internal quotation marks omitted). "For good reason, appellate courts ordinarily abstain from entertaining issues that have not been raised and preserved in the court of first instance." *Wood*, 566 U.S. at 473. In addition, we must also give "[d]ue regard for the trial court's processes and time investment." *Id.* "It typically takes a district court more time to decide a habeas case on the merits, than it does to resolve a petition on threshold procedural grounds." *Id.* "When a court of appeals belatedly interjects a procedural impediment after resolution on the merits, 'the district court's labor is discounted.'" *Arreola-Castillo*, 889 F.3d at 383 (quoting *Wood*, 566 U.S. at 474). "Perhaps even more troubling, 'the appellate

court acts not as a court of review but as one of first view.'"
*Id.* (quoting *Wood*, 566 U.S. at 474).

Here, we do not exercise our discretion to consider the
government's timeliness argument *sua sponte*. We have de-
clined to exercise that discretion on at least three prior occa-
sions. *See Arreola-Castillo*, 889 F.3d at 383–84; *Turner v. United
States*, 693 F.3d 756, 758–59 (7th Cir. 2012); *Hill v. Werlinger*,
695 F.3d 644, 647 (7th Cir. 2012). So too here, the government
"has presented nothing to show that this is an 'exceptional
case' in which we should base our decision on a forfeited
ground." *Werlinger*, 695 F.3d at 647 (quoting *Wood*, 566 U.S. at
473). Furthermore, the government does not cite any other ex-
amples of cases where we exercised our discretion to address
a forfeited timeliness argument in a habeas case on appeal.

The government asserts that the circumstances of this case
"militate in favor" of our consideration of its statute of limita-
tions defense because Anderson's filings "may have created
confusion regarding [the] deadline for a motion to vacate."
The government would have us hold Anderson to this dead-
line while excusing its own failure to raise the timeliness de-
fense despite almost a year between when Anderson initiated
his § 2255 proceedings and the government's response. We
decline to penalize Anderson for failing to meet a deadline
that the government itself did not identify. In addition, the
district court presided over Anderson's habeas petition for
over a year and ultimately resolved it on the merits. To dis-
miss the petition now on a forfeited defense would effectively
"discount" the district court's efforts. *See Arreola-Castillo*,
889 F.3d at 383. Therefore, we decline to consider the govern-
ment's forfeited timeliness defense.

**B. Ineffective Assistance of Counsel**

Turning to the merits, Anderson argues that his plea was not knowing and voluntary because his lawyer was constitutionally ineffective for failing to investigate the factual and legal bases for applying the death results enhancement of § 841(b)(1)(A) to his sentence.

The Sixth Amendment guarantees a criminal defendant the effective assistance of competent counsel during the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). To prevail on his ineffective assistance claim, Anderson must satisfy the two-pronged test of *Strickland v. Washington*, 466 U.S. 668 (1984). First, Anderson must show that his counsel's performance was deficient, which requires him to establish that his "counsel's representation fell below an objective standard of reasonableness" when measured against "prevailing professional norms." *Id.* at 688. Second, Anderson must show that this deficient performance prejudiced his defense. *Id.* at 687. To establish prejudice in the plea-bargaining context, Anderson must demonstrate a reasonable probability that "the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163.

*1. Deficient Performance*

Anderson argues that his counsel performed deficiently in two ways. First, he contends that his counsel "fail[ed] to investigate the factual basis for the 'death results' enhancement." He specifically alleged in his petition that his counsel should have consulted an expert regarding Reader's toxicology report and determined whether the government could prove beyond a reasonable doubt that heroin supplied by Anderson was the but-for cause of Reader's death. Second, Anderson

alleged that his counsel "fail[ed] to advise him on the viability of a but-for causation defense to the [death results] enhancement."

Anderson has alleged facts sufficient to support his claim of deficient performance. Under the standard set forth in *Burrage v. United States*, 571 U.S. 204 (2014), the government was required to prove that heroin distributed by Anderson was a "but-for," or at least an "independently sufficient," cause of Reader's death for the sentencing enhancement of § 841(b)(1)(A) to apply, *id.* at 218–19. The evidence did not clearly show, however, that Anderson's heroin was the but-for cause of death. Reader ingested two heroin doses the day he died; only one came from Anderson. The postmortem report listed Reader's cause of death only as "opiate intoxication" without explaining whether the heroin from Anderson was independently sufficient to cause death. Furthermore, while the exact times are unknown, the record indicates that Reader could have injected the two heroin doses and subsequently overdosed within the space of only a few hours.[1] Even without Anderson's heroin, therefore, the first dose of heroin alone, or perhaps in interaction with the Benadryl also in Reader's system, may have been independently sufficient to result in death. *See, e.g.*, *United States v. Harden*, 893 F.3d 434, 440 (7th Cir. 2018) (expert testified in case involving death results enhancement that someone could die "'within some hours' after injecting heroin, depending on the potency of the drug"). Adequate investigation of the toxicology results

---

[1] In his opening brief, Anderson asserts that a maximum of three hours passed between Reader's first heroin injection and his death.

may have helped determine whether Reader would have died regardless of the second dose.

The record demonstrates Anderson's counsel did not conduct an investigation into the factual basis for the death results enhancement. "In the plea bargaining context, reasonably competent counsel will attempt to learn all of the facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis before allowing his client to plead guilty." *Gaylord v. United States*, 829 F.3d 500, 506 (7th Cir. 2016) (citation and internal quotation marks omitted). While it is unclear the extent to which Anderson's counsel understood that the government was required to prove but-for causation as an element of Anderson's charged offense under *Burrage*, at Anderson's change-of-plea and sentencing hearings she suggested that there could be a "causation issue" regarding whether the heroin that caused Reader's death came from Anderson. Nonetheless, Anderson's counsel admitted in her affidavit to the district court that she "never discussed James Reader's toxicology results with anyone trained in toxicology," even though she herself was "not trained to interpret toxicology results." Although Anderson's counsel stated that she showed the toxicology results to Anderson, nothing in the record suggests that he could interpret them either. Finally, while Anderson's counsel may have discussed "the possibility of hiring a medical examiner" with him, the record is silent as to what, if any, advice she provided Anderson about the cause of Reader's death and the death results enhancement to enable Anderson to make an informed decision whether to hire an expert, let alone plead guilty. Anderson thus may have a viable claim of deficient performance. *See Miller v. United States*, 940 F.3d 371, 375 (7th Cir. 2019)

(emphasizing that a defendant's decision to plead guilty must be adequately "informed by counsel's advice").

This case bears many factual similarities to *Gaylord v. United States*, upon which both parties here rely. In that case, Gaylord pleaded guilty to drug crimes under § 841(a)(1) and received the death results enhancement because a user died after ingesting oxycodone distributed by Gaylord, as well as cocaine from another source. 829 F.3d at 503. The postmortem and forensic pathology reports listed the cause of death as "oxycodone and cocaine intoxication." *Id.* Gaylord brought a § 2255 petition, arguing that his counsel provided ineffective assistance by failing to adequately investigate his case and to provide him with the medical reports so that he could make an informed decision whether to plead guilty. *Id.* at 504. He further argued that his counsel failed to challenge the application of the death results enhancement to his sentence. *Id.* We agreed that, if proven, these alleged errors would constitute deficient performance. *Id.* at 508. We concluded that the evidence did not show that Gaylord's oxycodone "was the but-for cause of death" because the medical reports indicated that the cocaine concentration alone may have been enough to result in death. *Id.* at 507. Nor did the record show that the oxycodone "was an independently sufficient cause of death." *Id.* at 508. Because the district court did not hold a hearing, the record did not show whether his counsel was aware of the but-for causation standard, examined the medical reports, and provided Gaylord with the information necessary for a knowing and voluntary guilty plea. *Id.* We therefore held that he had sufficiently alleged ineffective assistance and remanded for a hearing. *Id.* at 508–09.

The chief factual issue in this case is essentially the same: whether drugs distributed by the defendant were a but-for cause of death. The most significant difference from *Gaylord* is that Reader took two separate doses of the same drug, obtained from different sources, rather than ingesting two different drugs (aside from Benadryl also found in his system). Although Anderson's counsel showed him the toxicology results, unlike defense counsel in *Gaylord*, that distinction is inapplicable here because nothing in the record suggests Anderson or his counsel could interpret those results. Accordingly, as in *Gaylord*, Anderson has alleged facts sufficient to support his claim that his counsel performed deficiently by failing to investigate whether his heroin was the but-for cause of death, and to communicate the results of that investigation to Anderson to enable him to make an informed plea.

The government argues that Anderson has not sufficiently alleged deficient performance by his counsel because he has not made a "comprehensive" showing of what further investigation would have revealed. As we have noted previously, "when the purported deficiency is based on a failure to investigate, we require the petitioner to allege what the investigation would have produced." *Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017) (citation and internal quotation marks omitted). Thus, the government contends that Anderson has not shown what the results of an adequate investigation would have been. The government also speculates that those results actually may have hurt, rather than helped, Anderson's case by confirming that the heroin he distributed was the but-for cause of Reader's death.

This speculative argument, however, discounts that Anderson's burden is only to "allege[] facts that, if proven,

would entitle him to relief." *Gaylord*, 829 F.3d at 506 (citation and internal quotation marks omitted). He is not required at this stage to hire a toxicologist and prove the merits of further investigation before the court.[2] Anderson has alleged that Reader ingested two doses of heroin before he died, only one of which Anderson supplied, and that investigation into the cause of Reader's death may have undermined the government's evidence for the death results enhancement by showing that the heroin unconnected to Anderson was independently lethal. Construing this *pro se* filing liberally, these allegations are sufficiently precise to satisfy Anderson's burden. *See Wyatt v. United States*, 574 F.3d 455, 459 (7th Cir. 2009) ("Pro se collateral review filings are construed liberally.").

The government also argues that the decision of Anderson's counsel not to further investigate the cause of Reader's death was "a reasonable strategic choice" entitled to deference. Under *Strickland*, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." 466 U.S. at 690; *see also United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005) ("Generally when an attorney articulates a strategic reason for a decision, the court defers to that choice."). According to her affidavit, Anderson's counsel showed the postmortem and toxicology reports to Anderson and discussed them with him. She also stated that she considered engaging an expert to help interpret the reports, but Anderson authorized her to proceed

---

[2] In support of its argument, the government highlights Reader's purported statement to a friend that he was not "high enough" after ingesting the first dose. This statement by a person with no apparent medical training, and under the influence of drugs, is insufficient to prejudge the merits of further investigation.

with plea negotiations without one. The government asserts that these actions, combined with the likelihood that further investigation would have reinforced that Anderson's heroin was the but-for cause of death, made the decision to secure a plea agreement without further investigation reasonable.

We disagree. The Supreme Court has held that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. When an ineffective assistance claim involves an allegedly inadequate investigation, "a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527 (2003). In other words, "*Strickland* does not establish that a cursory investigation automatically justifies a tactical decision with respect to … strategy. Rather, a reviewing court must consider the reasonableness of the investigation said to support that strategy." *Id.*; *see also Campbell v. Reardon*, 780 F.3d 752, 766 (7th Cir. 2015) ("[T]he adequacy of the pretrial investigation … was clearly established under *Strickland* as the critical threshold question … .").

Under the circumstances here, counsel's decision not to further investigate the available toxicology evidence was unreasonable. Whether heroin distributed by Anderson was a but-for cause of Reader's death was essential to the application of the death results enhancement. Reader ingested multiple doses of heroin shortly before he died, only one of which Anderson supplied. Further investigation of the toxicology evidence could have therefore significantly informed

Anderson of the viability of a defense to that enhancement and, consequently, whether to plead guilty.

Anderson's counsel never attempted to discover what the results of such an investigation might be, however, despite her awareness that Reader had ingested heroin from multiple sources. She could not interpret the toxicological evidence on her own, nor did she consult with an expert who could. That she showed the evidence to Anderson, a person with no relevant medical or legal training, and that he authorized her to proceed with plea negotiations without engaging an expert does not make her performance constitutionally sufficient. Given the obvious value of further investigation in this case, we cannot view the decision of Anderson's counsel to proceed under these unique factual circumstances without investigating the causation issue as reasonable.

### 2. *Prejudice*

Having determined that Anderson has sufficiently alleged that his counsel performed deficiently, we turn to the prejudice prong of the *Strickland* test. Anderson asserts that but for his counsel's deficient performance, he would have gone to trial.[3] "[A] mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice." *Cieslowski*, 410 F.3d at 359 (quoting *Berkey v. United States*, 318 F.3d 768, 772–73 (7th Cir. 2003)). Instead, "the

---

[3] Anderson also argues that but for his counsel's errors, he would have bargained for a more favorable plea deal. Because we conclude that Anderson can show prejudice based on the reasonable probability that he would have gone to trial, we need not reach this argument. We do not mean to hold, however, that Anderson is foreclosed from pursuing this argument on remand.

defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). When a defendant alleges that his counsel did not make an adequate investigation, whether there is prejudice "will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Id.*

Anderson has alleged sufficient facts to support a claim of prejudice. Without the death results sentencing enhancement, Anderson's Sentencing Guidelines range could have been as low as 168 to 210 months' imprisonment under U.S.S.G. § 2D1.1(c)(5), based on an offense level of 30 and a criminal history category of VI. With the enhancement, Anderson faced a mandatory life sentence under § 841(b)(1)(A) as an offender with a prior drug felony conviction.

The government argues that other "unchallenged" factors in the Presentence Investigation Report would have resulted in a Guidelines range of 235 to 293 months, based on an offense level of 33 and a criminal history category of VI. Anderson's counsel originally objected to those factors, however, and withdrew the objections after the court accepted Anderson's plea under Federal Rule of Criminal Procedure 11(c)(1)(C). Had Anderson not entered into the plea agreement, his counsel could have continued to challenge those factors or sought to negotiate a more favorable sentence. *See Cieslowski*, 410 F.3d at 364 ("A sentence imposed under a Rule 11(c)(1)(C) plea arises directly from the agreement itself, not from the Guidelines … ."). Moreover, even if Anderson faced a higher Guidelines range because of other factors, the

maximum sentence still would have been short of the mandatory life sentence he faced with the death results enhancement.

The government also contends that even without the enhancement, because of his criminal history Anderson would have faced a statutory minimum sentence of twenty years in prison under § 841(b)(1)(A). Thus, a guilty verdict at trial would have resulted in a sentence ranging from twenty years' to life imprisonment. This argument, however, again misses the mark. As the Supreme Court has instructed, "[w]hen a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain." *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017). Instead, we consider "whether there was an adequate showing that the defendant, properly advised, would have opted to go to trial." *See id.* (citing *Lockhart*, 474 U.S. at 60). The decision whether to go to trial or plead guilty involves "assessing the respective consequences of a conviction after trial and by plea." *Id.* at 1966. "When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive." *Id.*; *see also id.* at 1966–67 ("For example, a defendant with no realistic defense to a charge carrying a 20-year sentence may nevertheless choose trial, if the prosecution's plea offer is 18 years.").

Under the circumstances of this case, Anderson has adequately alleged a reasonable probability that he would have rejected the plea deal in favor of going to trial but for his attorney's deficiencies. Had he received effective assistance, Anderson would have had better insight into his likely

sentence if convicted at trial. If the government could prove the basis for the death results enhancement, Anderson would have faced a life sentence. Anderson's § 2255 petition, however, questions the government's ability to prove that basis. Without the enhancement, Anderson would have faced a sentence ranging from a statutory mandatory minimum of twenty years—the same sentence he agreed to in his plea—to a maximum of just over twenty-four years (under the higher Guidelines range advocated by the government). Confronted with such similar sentencing consequences, and with the prospect of a life sentence off the table, Anderson may well have decided that he had little to lose and much to gain by playing the odds at trial rather than pleading guilty. While his prospects of an acquittal may have been slim, "the possibility of even a highly improbable result may be pertinent to the extent it would have affected his decisionmaking." *Id.* at 1967. Accordingly, we cannot conclude that it would be irrational for Anderson to reject a twenty-year plea offer in favor of forcing the government to prove its case at trial.

The "contemporaneous evidence" in the record substantiates Anderson's assertions about whether he would have pleaded guilty "but for his attorney's deficiencies." *Id.* (explaining that courts "should not upset a plea solely because of *post hoc* assertions from a defendant"). At the change-of-plea hearing, Anderson asserted that "the James Reader situation is a lot more detailed than it says here." He also stated his understanding that Reader "bought some heroin from someone outside of my conspiracy" and "took some prescribed meds" in addition to the heroin distributed by Anderson. Although Anderson confirmed that he would not "dispute" or "challenge" the government's offer of proof, it is

apparent that he agreed to those facts because he did not want the plea agreement to "change." If his counsel had conducted an adequate investigation of the government's evidence for the death results enhancement, there is a reasonable probability that the outcome of the plea process would have been different.

### C. Evidentiary Hearing

Anderson is entitled to an evidentiary hearing on his ineffective assistance of counsel claim if he has alleged "facts that, if proven, would entitle him to relief." *Martin*, 789 F.3d at 706 (citation and internal quotation marks omitted). Ineffective assistance claims often require an evidentiary hearing to develop the record more fully. *See Osagiede v. United States*, 543 F.3d 399, 413 (7th Cir. 2008). A district court need not grant a hearing, however, if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Nor is a hearing required "if the petitioner makes allegations that are 'vague, conclusory, or palpably incredible,' rather than 'detailed and specific.'" *Spiller v. United States*, 855 F.3d 751, 754 (7th Cir. 2017) (quoting *Martin*, 789 F.3d at 706).

Here, Anderson has alleged sufficient facts to warrant an evidentiary hearing on his ineffective assistance of counsel claim. At that hearing, Anderson's counsel will have an opportunity to respond to Anderson's allegations and to explain whether she was aware of the but-for causation standard and the extent to which she understood and consulted with Anderson about the death results enhancement and the need to hire an expert to interpret the toxicological evidence. *See Gaylord*, 829 F.3d at 506 (explaining that before allowing a client to plead guilty, reasonably competent counsel will attempt to

learn the relevant facts of the case, estimate a likely sentence, and communicate her analysis to the client); *Osagiede*, 543 F.3d at 409 ("All lawyers that represent criminal defendants are expected to know the laws applicable to their client's defense." (citation omitted)). Anderson's counsel may have consulted at length with Anderson about, or had strategic reasons for, proceeding with plea negotiations without engaging an expert, but the record before us contains insufficient information to allow us to make this determination. Thus, we conclude that an evidentiary hearing is warranted.

### III. Conclusion

For the foregoing reasons, we VACATE the decision of the district court and REMAND to the district court for an evidentiary hearing on Anderson's § 2255 petition.